No. 47,861

HIGHWAY OIL, INC., *Appellee,* v. CITY OF LENEXA, KANSAS, *Appellant.*

(547 P. 2d 330)

Opinion filed March 6, 1976.

*Timothy J. Turner,* of Prairie Village, argued the cause and was on the brief for the appellant.

*Peter A. Martin,* of Breyfogle, Gardner, Martin, Davis and Kreamer, of Olathe, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is a zoning controversy. Challenged here is the propriety of a district court order finding that the refusal of the city of Lenexa to rezone a tract of land and grant a building permit for a filling station was unreasonable and arbitrary and directing the rezoning and permit applied for.

Certain facts were stipulated to by the parties in the district court. In addition the stipulation authorized the applications for rezoning and the pertinent minutes and records of the city, as well as certain photographs, surveys and plats, to be considered in evidence.

Appellee Highway Oil, Inc., is the owner of the tract in question. The property is located in the northeast part of the intersection at 95th street and Noland Road in Lenexa and is part of a block bounded on the other sides by Gillette and 94th streets. The portion facing 95th street is 366 feet in length while that along Noland Road is 119.66 feet.

In 1966, before appellee obtained any interest in the property in question, the city zoned it as C-P (planned business district). The C-P classification was designed for a commercial tract of land at least three acres in size under common ownership and control where there was a possibility of a unified plan of development.

However, a history of the nine C-P zones in the city showed that requirements of common ownership and unified development were not enforced after the original C-P classification was made. The city had routinely approved zoning applications on behalf of owners of individual tracts within the C-P area in order that they could develop the land on a lot by lot basis. The property directly across the street south from appellee's, also zoned C-P, had been developed in this piecemeal manner.

In the early spring of 1971 appellee made application to the city planning commission for approval of its plans to construct a gasoline filling station on the tract in question. Owners of land with C-P classification were required to submit plans for any new construction in the area. This application was for a building permit, not for a change in zoning. A gasoline station was a permissible use with the C-P zoning and there were four other existing filling stations in the immediate vicinity of appellee's land. On May 11, 1971, the planning commission, on a 3-2 vote, recommended to the city council that the city approve the plans.

The matter came on for hearing before the city council on June 3, 1971. A question was raised as to whether the original C-P classification for the tract was validly enacted and whether it remained in effect by reason of the fact construction upon it had not commenced within one year from the initial time of the zoning. The C-P zoning had never been questioned by any party until this time. In the opinion of the city attorney who was acting as such until June 3, 1971, the C-P classification was legal and still in effect. However, at the city council meeting on June 3, 1971, the council appointed a new city attorney, who suggested the matter be tabled so he could research the question. This suggestion was followed and the new city attorney subsequently ruled the C-P zoning for the tract was void and had reverted to R-1 (residential). Not wanting to be caught in the cross-fire of conflicting legal opinions appellee tacitly accepted the new city attorney's opinion and filed an application for rezoning with the planning commission on July 9, 1971. The application requested rezoning from C-P or R-1, depending on which city attorney was correct, to C-2 (general business district), a classification which also permitted filling stations.

In September of 1971 the mayor of Lenexa increased the number of members on the planning commission by appointment. An attempt was made to remove the existing chairman and elect an-

other in his place. For several weeks it was uncertain who was presiding and it was impossible to transact business before the commission. The matter of appellee's requested rezoning was continued from meeting to meeting while, according to the parties' stipulation of facts, "the internal affairs of the City precluded the transaction of normal business".

The next step to be noticed is the planning commission's eventual decision to hold a public hearing, on its own proposal, to rezone appellee's property from that of C-P to C-1 (restricted business district), a classification which would not permit a filling station. The planning commission held this hearing December 7, 1971, as a result of which it recommended rezoning to C-1. Its minutes stated it desired to halt piecemeal development on planned areas and C-1 zoning would allow the highest and best use of the property. The proposed change was heard by the city council on January 20, 1972. The ordinance to rezone the land was tabled at that meeting to allow further study and the recommendation remained in that status indefinitely.

After these repeated delays by the city appellee's application for rezoning was finally heard by the planning commission on April 3, 1972. The commission recommended denial. The minutes of the meeting do not clearly state the reason for the decision. They indicate concern with the highest and best use of the land and that "The narrowness of the lot prohibits too great a setback from 95th street. However, it was decided that this decision would be discussed at the time a building permit was applied for". This recommendation was adopted by a majority vote of the city council at a meeting held April 20, 1972. At this meeting the planning commission chairman stated that setback requirements had been a factor in the commission's recommendation. Appellee made it clear at that meeting and throughout that it was willing to meet any reasonable setback and screening requirements made by the city. Shortly thereafter the planning committee was dissolved and not recreated for a brief interval.

On May 12, 1972, appellee commenced this action in district court pursuant to K. S. A. 12-712 to test the city's refusal to rezone the property. After some further delay for various reasons the case was tried to the court March 1, 1974.

In addition to the stipulated facts and exhibits the court had before it the testimony of appellee's vice-president, Albert Hadley, who had handled appellee's applications and of Alan Uhl, a city

councilman who had previously served on the planning commission. The court made extensive findings of fact and concluded that the denials of appellee's requests for a building permit and for subsequent rezoning were unreasonable, arbitrary and inconsistent with the practice of the city in the past and with the character of the neighborhood; further they were without any legitimate bearing on the public health, safety, comfort, morals or welfare; also that there was considerable evidence the denials were based on political considerations, a desire to restrict competition and sham screening and setback complaints. The court ruled the city's actions were void and directed approval of plaintiff's application for construction of a gasoline station and issuance of the requisite permits.

The city has brought the matter here for review.

The rules for judicial review of municipal zoning ordinances and determinations are well established. "It must be understood that the governing body has the right to prescribe zoning, the right to change zoning and the right to refuse to change zoning" (*Arkenberg v. City of Topeka,* 197 Kan. 731, 734-735, 421 P. 2d 213). The power of the district court, in reviewing zoning determinations, is limited to determining (1) the lawfulness of the action taken, that is, whether procedures in conformity with law were employed, and (2) the reasonableness of such action. In making the second determination, the court may not substitute its judgment for that of the governing body and should not declare the action of the governing body unreasonable unless clearly compelled to do so by the evidence (*Arkenberg v. City of Topeka,* supra; *Keeney v. City of Overland Park,* 203 Kan. 389, 454 P. 2d 456; *Paul v. City of Manhattan,* 212 Kan. 381, 511 P. 2d 244). "There is a presumption that the governing body acted reasonably and it is incumbent upon those attacking its action to show the unreasonableness thereof", by a preponderance of the evidence (*Arkenberg v. City of Topeka,* supra, p. 735; *Creten v. Board of County Commissioners,* 204 Kan. 782, 466 P. 2d 263). The mark of unreasonable action by zoning authorities is ". . . when the action is so arbitrary it can be said it was taken without regard to the benefit or harm involved to the community at large including all interested parties and was so wide of the mark its unreasonableness lies outside the realm of fair debate" (*Gaslight Villa, Inc. v. City of Lansing,* 213 Kan. 862, Syl. ¶ 3, 518 P. 2d 410).

Before measuring the city's action by the foregoing standards we should examine further the character of the neighborhood involved

and other evidence before the trial court. As already indicated, appellee's property is at the northeast quadrant of the intersection at 95th and Noland Road. Immediately adjoining it on the east and in the same block is a Clark Oil filling station. Continuing on east, across Gillette street, are two adjoining filling stations, Standard Oil and Texaco (formerly Sinclair). Cornering diagonally on the northeast point of appellee's property and in the same block is a tract of land zoned C-P. Directly across Gillette street from this latter tract is a tract zoned R-1, use not shown. Directly north of appellee's property and in the same block, are two tracts, comparable in size to that of appellee, which are zoned R-1 and on each of which is located one rental house. West of this property across Noland Road is a tract upon which a house has been converted to a preschool operation. Directly west of appellee's property across Noland Road is a tract zoned "special use" containing an office building. Diagonally across the 95th—Noland Road intersection from appellee's property is a tract zoned R-1 upon which a baby-sitting operation is conducted. Directly across 95th street south of appellee's property is a large tract zoned C-P which contains a D-X filling station, a bank, office building, liquor store and a pizza parlor (exact order along 95th street not shown). 95th street is an exit from Interstate 35 and a main arterial street leading into Lenexa.

The record is not clear as to the exact reasons for the city's refusal to grant appellee's applications. There are indications it was because the governing body desired to halt piecemeal development in planned areas and because the narrowness of appellee's lot prohibited the setbacks which would be necessary. It appears the concern over piecemeal development occurred only after appellee made application to build what would be a cut-rate filling station and opposition developed from nearby major oil company station operators. That opposition was clearly shown in several of the proceedings and the trial court made a specific finding there was "considerable evidence tending to prove that the denials were based upon political considerations, a desire to restrict competition, and sham screening and set-back complaints". Counsel for appellant as well as one of the councilmen admitted that appellee's applications had become embroiled in "politics". The "politics" included frequent replacement of city attorneys with the result five different ones have participated in this proceeding. All that was entailed in this continuing controversy is not shown. In common parlance the term

"politics" has come all too often to mean the activities between competing interest groups by whatever means, rather than the objective operation of government in the best interests of all concerned.

It does appear appellee's property was singled out for special treatment once it made its applications rather than merely being dealt with as a part of an overall program. The Clark Oil Company tract immediately adjacent had been unanimously approved for a filling station by a planning commission and council which had included some members who opposed similar action on appellee's. Three other stations were within a stone's throw. The essential character of the entire area surrounding appellee's tract was either already commercial or being held for that purpose and was not out of harmony with another filling station. The owner of the tract immediately north of that of appellee expressed opposition to appellee's requests but at the same time it appears he sought access to 95th street over appellee's land so that his R-1 property might be more attractive for commercial purposes. Such access was not granted by appellee. This landowner offered to withdraw his objections if appellee would buy him out. Also it appears that at the time of the hearing in district court this landowner had secured a favorable recommendation for commercial zoning of his own property. That appellee's property was being singled out for unique treatment is also demonstrated in the fact appellee had meanwhile contracted to sell a tract off the east side to a third party for the construction of a 7-11 store, sale contingent on the city's approval of requested rezoning by the third party—the city refused to rezone that portion of appellee's land, thus voiding the sale contract, despite the fact the city's proposed rezoning would have permitted construction of the 7-11 store. The trial court found that this independent denial bolstered its conclusion of arbitrary actions in zoning decisions respecting appellee's land. Councilman Uhl, who had formerly served on the planning commission, testified in district court that approval of appellee's applications would have been consistent with former actions by the city.

The second purported reason for the city's refusal seems to have been appellee's inability to meet setback requirements because of the narrowness of its tract. The trial court branded this and any screening complaints as sham. The record bears this out. Throughout the entire proceedings appellee offered to meet any reasonable setback and screening requirements. More importantly paragraph

10 of the parties' agreed stipulation of facts, with reference to the council's final action on April 3, 1972, stated:

". . . The property to be screened would be other commercially zoned property and the *plat plan for the gasoline station showed that it met the legal setback requirements.* Plaintiff further offered to construct all improvements beyond the ultimate right of way needs for the uncertain future improvements of 95th Street." ( Our emphasis. )

The record amply justifies the trial court's conclusion that the city acted arbitrarily and unreasonably in denying appellee's applications and its judgment is affirmed.

APPROVED BY THE COURT.