DONALD L. SMITH *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF MACOMB *et al.*, Defendants-Appellants.

Third District   No. 75-239

Opinion filed May 31, 1976.—Rehearing denied July 21, 1976.

Barash & Stoerzbach, of Galesburg, Charles H. Flack and Harris & Harris, both of Macomb (Burrel Barash, of counsel), for appellants.

Kreger & Karton, Ltd., of Chicago (Donald J. Kreger and Robert Karton, of counsel), for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

The defendants (The city of Macomb, William Hvarven, William P. Hagerty and Florence Bell Hagerty) have appealed from a judgment of the circuit court of McDonough County granting the declaratory and injunctive relief sought by the plaintiffs (Donald L. Smith and Elnora J. Smith, Gary Sherer and Nancy Sherer, Wayne Steward and Carol Ann Steward), and holding two amendatory zoning ordinances invalid.

The plaintiffs, as owners of property located in the immediate vicinity of a warehouse and a vacant lot owned by William P. Hagerty and Florence Bell Hagerty, commenced this action to declare invalid two amendatory zoning ordinances to the city of Macomb Zoning Ordinance. These two ordinances had rezoned the Hagerty property from R-2 Single Family District to I-1 Light Industrial District. The plaintiffs also sought to declare a building permit issued by William Hvarven, building inspector, in violation of the building code and void.

The circuit court ruled that the two amendatory zoning ordinances were void and permanently enjoined the issuance of a building permit unless allowed by the R-2 Single Family Residence zoning classification. The Hagertys were permanently enjoined from using the property for any purpose not permitted by this same classification except that continued use of the warehouse was not affected. The defendants have appealed from this judgment. In addition, the plaintiffs have taken a cross-appeal from an order denying their petition for attorneys fees, pursuant to section 11—13—15 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—13—15).

The amendatory zoning ordinances involved on this appeal pertain to portions of lot 3 and lots 4, 5 and 6 of block 3 in Garretts Addition to the city of Macomb. By Ordinance No. 898, the subject property had been zoned R-2 Single Family Residence District.

On December 16, 1966, a Mr. Simons conveyed to Leroy Brown lot 6 and the west 20 feet of lot 5 of block 3 in Garretts Addition. Brown applied to the Zoning Board of Appeals for a variance to construct a warehouse. The petition in support of this application was signed by three of the plaintiffs, including Donald L. Smith, Elnora J. Smith and Gary Sherer. Another plaintiff, Nancy Sherer, served at that time as a member of the Zoning Board of Appeals, but did not vote on the application. On January 18, 1967, the application for a variance was granted, and thereafter a warehouse was built.

Brown used the warehouse for his transfer business. He later used it for the storage and use of garbage trucks in conection with his garbage contract with the city of Macomb. Still later, he leased it to the Pontiac garage for the storage of automobiles for approximately 18 months to 2 years. Thereafter, the warehouse was rented to Hagerty for beer storage.

On December 14, 1970, the Windsor estate conveyed to Brown lots 4 and 5 except the west 20 feet. On January 6, 1971, Brown entered into a contract of purchase with Hagerty for lots 4, 5 and 6, which was extended to April 1, 1971, and then lapsed.

In January, 1971, part of the warehouse was rented to Hagerty for the storage of beer at $100 per month. In April, 1971, Hagerty rented the entire warehouse at $300 a month. Hagerty installed two beer coolers costing approximately $12,000, and the rental to Hagerty subsequently was $310 per month.

On May 17, 1971, Simon conveyed to Brown the triangular tract immediately north of lot 6 and part of lot 5. This triangular tract was unmarked on the zoning map.

On September 7, 1971, Ordinance No. 1241 was enacted by the city of Macomb changing the zoning from R-2 Single Family Residence District to I-1 Light Industrial District with respect to lots 4, 5 and 6. The plaintiffs and other property owners had filed objections to the passage of this ordinance. Five aldermen voted to adopt the ordinance and five aldermen voted not to adopt it and the mayor of the city voted in favor.

On May 26, 1972, Hagerty received the plan for the construction of a prefabricated warehouse (referred to as a Kirby building), which he intended to build adjacent to the existing warehouse. On June 7, 1972, the Windsor estate deeded to Brown the triangular tract immediately north of lots 4 and 5. On June 8, 1972, Brown deeded to Hagerty, for a consideration of $40,000, lots 4, 5 and 6 and the triangular piece north of lots 4, 5 and 6. The record discloses that Hagerty thought he was buying three lots with 60 feet frontage each, or 180 feet on West Washington Street, and he though he was buying the vacant property as well as the warehouse.

On June 9, 1972, Hagerty applied for a building permit for the construction of the additional warehouse on the vacant property, and the permit was issued on June 13, 1972. On June 14, 1972, Hagerty entered into a contract for the construction of the Kirby warehouse and contracted to pay $9,375 on account. On June 17, 1972, Hagerty borrowed $30,000 and placed a mortgage on lots 4, 5 and 6.

The vacant property, upon which Hagerty had contracted to construct the Kirby warehouse, was in fact lot 3 in block 3 in Garretts Addition except 3 feet of even width off the east side thereof. This property was not owned by Hagerty at the time he received the building permit. The building permit had been issued for the purpose of building a warehouse in accordance with the Kirby building plan.

After the contract for the construction of the warehouse was entered into, Hagerty began to level the ground and clear it off in early August, 1972, when for the first time it was learned that Hagerty didn't own the

vacant property. Mrs. Hagerty received a telephone call from Mrs. Sherer, one of the plaintiffs, telling her that work was being done on land not owned by them and to stop construction. The work was promptly stopped on August 17, 1972, and the building permit was revoked by Mr. Hvarven.

On August 24, 1972, a survey of the area was made by Roberts Engineering Company. On September 20, 1972, Hagerty purchased lot 3 except the east 3 feet thereof for $3,000 from the Windsor estate. This property was the vacant property upon which Hagerty had intended to construct the Kirby building.

On November 20, 1972, the plaintiffs filed this suit.

On Dember 4, 1972, the City Council of the city of Macomb enacted Ordinance No. 1330, rezoning the west 57 feet of lot 3 in block 3 in Garretts Addition as follows: the west 32 feet of this real estate was changed from R-2 Single Family Residence District to I-1 Light Industrial District, and the remaining 25 feet were to act as a buffer zone between an I-1 Light Industrial District and an R-2 One-Family Residential District in which the Hagertys agreed to plant a row of trees. On June 29, 1973, a building permit was issued by William Hvarven, building inspector, based upon application, plans and specifications filed with him. No construction has taken place.

When Brown purchased lot 6 and the west 20 feet of lot 5, there was a blacksmith shop on the west side of Washington Street, north of the house in which Brown lived, and a fish market and bait shop immediately west of Brown's house and adjoining it. Brown had built a building for the storage of trucks. A muffler shop, built in 1961, serviced trailers and cars which were parked at the muffler shop for such service. There was a dilapidated barn, three out-buildings, a storm cellar cave and an old apple orchard. Brown cleared the area, hauled in approximately $2,000 worth of fill, and when the warehouse was finished, used it for his transfer business. He then used it for the storage and use of garbage trucks in connection with his garbage contract with the city of Macomb.

At the time of the hearing in this case, the warehouse was still used as such, situated on parts of lots 6 and 5. The remaining part of the property was vacant. To the east of this property is a single-family residence. On the north side of Washington Street, directly opposite the warehouse, is the U-Haul Rental Agency for small trailers. Adjacent thereto, on the east is the muffler repair shop. Directly to the east of that, on the corner of Sherman Street is a single-family residence, and directly behind the residence is an insurance agency. The remainder of the block on both sides of Washington Street to the east are single-family residences. There is one trailer that sits five or six houses east of the alley. On Jefferson Street there are single-family houses. On Ward Street, south of the railroad

tracks which run in a diagonal direction north of the warehouse, and directly opposite the warehouse, are two single-family houses. Behind these homes, there is a garage building used for auto repairs. The area on both sides of Normal Street is all zoned I-1 Light Industrial. There is a warehouse on the north part adjacent to the railroad tracks. Going east on Washington Street, there is a Volkswagen repair shop, which is zoned B-2 Commercial. Access to the Volkswagen repair shop is through an alley on Washington Street which is between I-1 Light Industrial and R-3 Multiple Dwelling. The area north of the railroad tracks is all business, or commercial, or light industrial, and is all presently zoned I-1 Light Industrial.

Walter B. Stoutamoyer, an appraiser with an MAI designation, testified on behalf of the plaintiffs that the highest and best use of the subject property would be low density, multiple-family usage. He further testified that rezoning the subject property from the R-2 classification to the I-1 classification would diminish the value of the neighborhood located east of Ward Street and south of Washington Street, and that the average diminution of value would be approximately 25 percent.

Richard Dunlavey, a planner, testified for the plaintiffs that the highest and best use of the subject property would be multiple dwellings. He further testified that the rezoning of the subject property to the I-1 classification would do harm to the residential character of the neighborhood, located east of Ward and south of Washington.

Allen F. Rottmann, an appraiser and land use consultant, testified for the defendants, stating that the highest and best use of the subject property would be I-1 Light Industrial use. His reasoning was that the zoning on the north is I-1 Light Industrial and on the west it is presently zoned I-1 Light Industrial. The subject property is adjacent on two sides automatically to an I-1 use. There are two uses that are either heavy commercial or service commercial or light industrial which are directly across the street from the subject property backing onto the railroad tracks. The area is in a transitional stage, slowly turning from single-family dwelling use to a different use, which is either commercial or probably light industrial or a combination of both. Ninety-five percent of the houses are between 40 to 70 years old. There are a few new houses on Ward Street, but another single-family residence would not be built on Washington Street. The I-1 classification zoning for lots 4, 5 and 6 and the west 32 feet of lot 3 would not have an adverse effect on the neighborhood or the adjoining property for the reason that any depreciating effect has already occurred in the area.

Richard G. Hill, a licensed real estate broker in Macomb, Illinois, testified for the defendants, stating the highest and best use of the subject property would be I-1 Light Industrial use. His reasoning was based on

his experience with the real estate in the area. He stated that it would not be economically feasible to build a single-family dwelling in the area, and that a multifamily dwelling would not be suitable because there would be no economic return. He stated also that the Smith property, the property next to the subject property, and the property on Jefferson would not be adversely affected by the extension of the existing warehouse because the trend had started many years before.

Jerry S. Purdum, executive vice-president of the Macomb Savings and Loan Association and engaged in insurance and real estate, testified that the highest and best use of the subject property would be I-1 Light Industrial use. He based this opinion on his experience in appraising real estate in the area, including the property formerly owned by Brown, his experience with loans on real estate in the area, and the trend in the area away from single-family dwellings. He further stated that in his view the changing trend was from static to declining from the standpoint of residential real estate, and that it would not be economically feasible to build a single-family dwelling on the vacant lot next to the warehouse.

H. Foster Sears and James R. Pumo, both real estate brokers in the city of Macomb, testified for the defendants that in their opinion the highest and best use of the subject property would be for commercial purposes.

Plaintiffs rely first on section 11—13—14 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—13—14), which requires a favorable vote of two-thirds of the aldermen of a municipality, in order to pass an amendatory zoning ordinance once an appropriate written protest has been filed. Plaintiffs contention is directed toward both ordinances, but an examination of the record discloses that only the first ordinance, No. 1241, failed to receive a two-thirds vote.

■■ We recognize that our Supreme Court has upheld the constitutionality and purpose of legislation which affords special rights to those property owners particularly situated. (*Bredberg v. City of Wheaton*, 24 Ill. 2d 612, 182 N.E.2d 642; *Herrington v. County of Peoria*, 11 Ill. App. 3d 7, 295 N.E.2d 729.) Corporate authorities must exercise their power to amend a zoning ordinance in a proper manner and must comply with the statutory requirements of notice and hearing. 10 Ill. L. & Pr. *Cities, Villages, and Other Municipal Corporations* §1142 (1955).

In the instant appeal, the vote with regard to Ordinance No. 1241 was improper, but in view of the conduct of all the parties, it does not necessarily follow that the use of the property by the Hagertys is also improper.

In *Nott v. Wolff*, 18 Ill. 2d 362, 163 N.E.2d 809, the village manager and the village building commissioner informed the plaintiff Nott that a motel was a permitted use for the subject property. The plaintiff then entered into a long-term lease, retained an architect to prepare plans and

specifications for a motel on the property, and made application for an occupancy permit. An amendatory ordinance was then adopted prohibiting the use. The court stated:

> "The substantial change of position by plaintiffs and their obligations incurred in reliance upon the issuance of the permit—based upon the existing zoning ordinance and assurances of village officials—entitles the plaintiffs to the building permit to complete the construction regardless of the amended zoning ordinance." 18 Ill. 2d 362, 371.

In *Renieris v. Village of Skokie*, 85 Ill. App. 2d 418, 229 N.E.2d 345, the village granted a special use permit, pursuant to an amendatory zoning ordinance, allowing the construction of a motel. Relying upon this amendatory ordinance, the property owner committed substantial sums toward the purchase price and the franchise. Thereafter, an amendatory ordinance, revoking the special use permit and restoring the original zoning classification, under which motel construction was prohibited, was passed. The court held that the village was estopped from withdrawing the special use permit by virtue of the property owner's reliance upon the original amendatory ordinance. The court held further that a 15-month interim had followed, and that substantial monies had been expended, and as a result the village was barred from questioning the utilization of the property for a motel.

In *People ex rel. Beverly Bank v. Hill*, 75 Ill. App. 2d 69, 221 N.E.2d 40, substantial sums were expended to purchase property conditioned on the ability of the buyer to have the property rezoned for multiple dwellings. No ordinance was drawn to rezone the property. It was resold to the plaintiff who checked the zoning map, entered into a contract of purchase, submitted the plat to the Board of Trustees which disapproved it, and informed the purchaser that the property had not been rezoned. The purchaser had expended substantial sums for the plans. The court stated:

> "In light of these facts, we believe that the cause before us lends itself to an application of the doctrine of equitable estoppel. Clearly, it was the affirmative action by the public authorities with the apparent approval of everyone interested that caused plaintiff to change its position by making great expenditures which would not have been made but for the affirmative action of the Village and its officers. Plaintiff's actions were induced by the conduct and representations of the municipal officers, and justice and right require that plaintiffs be granted relief." (75 Ill. App. 2d 69, 76.)

See also *Dato v. Village of Vernon Hills*, 91 Ill. App. 2d 111, 233 N.E.2d 48.

■■ In the case at bar, Ordinance No. 1241 was enacted on September

7, 1971, and Ordinance No. 1330 was enacted on December 4, 1972. Although the plaintiffs filed their complaint on November 20, 1972, it was not until May 7, 1974, that they amended their complaint and asserted the theory that both ordinances were void because of lack of compliance with the required two-thirds vote. Under these circumstances, we believe that plaintiffs lack of due diligence and the substantial change in position made by the Hagertys in purchasing the property, executing a mortgage, and incurring other obligations, operates as an estoppel, precluding the plaintiffs from asserting the absence of a two-thirds vote. It was the duty of the plaintiffs to assert the invalidity of the ordinance on this ground within a reasonable time after its passage, particularly where they were objectors to it.

We turn now to plaintiffs contention that both amendatory zoning ordinances created an unreasonable zoning classification for the subject property.

■■ The courts have repeatedly stated that zoning ordinances are presumed valid, and that the burden is on the party challenging the validity of the zoning ordinance to prove by clear and convincing evidence that the ordinance as applied to the property is arbitrary and unreasonable and without substantial relationship to the public health, safety or welfare. (*Grobman v. City of Des Plaines*, 59 Ill. 2d 588, 322 N.E.2d 443; *Exchange National Bank v. County of Cook*, 25 Ill. 2d 434, 185 N.E.2d 250.) The presumption is based upon the recognition that zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare. (*Grobman v. City of Des Plaines*, 59 Ill. 2d 588, 322 N.E.2d 443.) The validity of each zoning ordinance must be determined on its own facts and circumstances. *La Salle National Bank v. County of Cook*, 12 Ill. 2d 40, 145 N.E.2d 65; *Stalzer v. Village of Matteson*, 14 Ill. App. 3d 891, 303 N.E.2d 489.

Among the factors to be considered when determining the validity of an ordinance are those enumerated in *La Salle Bank v. County of Cook*, 12 Ill. 2d 40, 145 N.E.2d 65: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed on the individual property owner; (5) the suitability of the subject property for the zoned purposes; (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. Although no one factor is controlling (*La Salle National Bank v. County of Cook*,

12 Ill. 2d 40, 145 N.E.2d 65), existing uses and zoning classifications of nearby property are of paramount importance. *Ryan v. County of Du Page,* 28 Ill. 2d 196, 190 N.E.2d 737; *Kellett v. County of Du Page,* 89 Ill. App. 2d 437, 231 N.E.2d 706.

■■ In the instant case, the burden was upon the plaintiffs to show the benefit derived by the community was outweighed by the injury incurred by them. We have reviewed the evidence presented and conclude that the plaintiffs have failed to overcome the presumption of validity for the zoning ordinance by clear and convincing evidence. No witness testified that the subject property was suitable for single-family dwelling use. Even the plaintiffs witnesses could only testify that the highest and best use of the subject property was low density multiple-family dwellings. The record discloses that the bulk of the nearby properties are either zoned or used for business purposes and for other purposes not compatible with single-family residence uses. It is obvious that the trend of development in the area is toward non-single-family uses. (*Dixon v. County of Kane,* 77 Ill. App. 2d 338, 222 N.E.2d 354.) We therefore hold that Ordinance No. 1241 and Ordinance No. 1330 did not create an unreasonable zoning classification for the subject property.

Since we have held that neither amendatory zoning ordinance was invalid, we need not consider the plaintiffs cross appeal for attorneys fees pursuant to section 11—13—15 of the Illinois Municipal Code (Ill. Rev. Stat. 1973, ch. 24, par. 11—13—15).

For the reasons stated the judgment of the circuit court of McDonough County is reversed and remanded, with directions that judgment be entered for the defendants.

Reversed and remanded with directions.

ALLOY, P. J., and BARRY, J., concur.