NOT DESIGNATED FOR PUBLICATION

No. 124,474

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARK MAIZE and SHANNON MAIZE,
*Appellants*,

v.

CITY OF LEAWOOD, KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Opinion filed January 13, 2023. Affirmed.

*Barbara B. Liu* and *Douglas J. Patterson*, of Property Law Firm, LLC, of Leawood, and *Michelle W. Burns*, of Burns Law, LLC, of Olathe, for appellants.

*Marcia L. Knight*, assistant city attorney, for appellee.

Before CLINE, P.J., ATCHESON and COBLE, JJ.

PER CURIAM: Dismayed by a developer's plan to rezone a vacant 13.5-acre tract adjacent to their neighborhood, Mark and Shannon Maize and Robert and Suzanne McQuain unsuccessfully fought the Leawood municipal government to derail the proposal. They then carried their fight to the Johnson County District Court. The district court entered summary judgment for the City of Leawood, finding the decision to rezone to be beyond legal reproach. The Maizes have appealed. Especially given the exceptional judicial deference due a municipality's action in rezoning a particular piece of land, we find no error in the district court's ruling and affirm.

1

The Maizes and the McQuains are among 16 homeowners in what's known as the Mission Heights subdivision at the very south end of Leawood. The subdivision was laid out under zoning regulations for Johnson County—before the City annexed the property. As a result, the individual lots in Mission Heights are unusually large compared to other residential areas in the immediate vicinity and have spacious setback and frontage buffers for the homes. Other nearby residential subdivisions are—in a nontechnical phrase— more compact; they have more houses built on smaller lots.

Amidst the growth in south Leawood, an irregularly shaped 13.5-acre tract that includes an easement for high-voltage powerlines remained undeveloped. Various reasons for the lack of development float through the record and are essentially irrelevant to the legal dispute. The tract lies next to the Mission Heights subdivision. After various fits and starts that are also largely beside the point, a developer presented a plan to the City to develop the tract with 24 lots for single-family homes, described as one or one-and-a-half story "villa" dwellings, and dedicated common areas. The plan required rezoning the parcel from R-1, a classification confined to single-family residential development, to RP-2, also permitting only single-family housing units but on smaller lots. The developer's proposal skipped over RP-1 zoning, an intermediate residential classification between R-1 and RP-2.

The developer represented to City officials that with R-1 zoning, the tract would be limited to about 15 lots, likely rendering any plan financially unworkable. If the homes were built and priced to cover the development and constructions costs, they probably would not sell because of the tract's irregularity and the utility easement. Less expensive homes that should be marketable on 15 lots would not generate enough revenue to cover the costs of roads, drainage systems, and the common areas. So putting nine more homes

on the site—with the required rezoning—entailed an essential component of the proposed plan.

The Maizes, the McQuains, and some other residents of Mission Heights opposed the development plan at various steps in the municipal review and approval process, including before the City Planning Commission and the City Council. They expressed trepidation about increased vehicular traffic, possible noise and visual pollution, and water runoff with the proposed plan. And they pointed out the RP-2 zoning would permit denser housing than the plan called for, allowing the developer to switch to a proposal with even more lots. At no point, however, did the Maizes, the McQuains, or other opponents offer any expert opinion that the development plan would have a negative effect on property values in Mission Heights.

The developer sought to mitigate the stated concerns in several ways. First, of course, the plan called for only nine more lots and homes. The plan required installation of a storm sewer system, thereby alleviating excessive runoff, and called for several somewhat larger lots on the border with Mission Heights to curtail any perceived imbalance in appearance. The developer also agreed that if it did not pursue the proposed plan, it would request the tract be restored to R-1 zoning. That agreement was incorporated into the ordinance approving the rezoning.

As we have indicated, the housing density in the developer's plan was comparable to that in existing residential areas around Mission Heights. The City planning staff, however, opposed the rezoning request because RP-2 zoning was designed for and customarily used as a buffer classification for tracts between less dense residential areas and commercial developments. The RP-2 zoning would not serve that purpose in the developer's plan and, therefore, should be avoided, according to the planning staff. The planning staff also noted the overall difference in lot sizes between the proposal and the Mission Heights subdivision.

3

The planning commission approved the plan and the rezoning on a 7-1 vote in late May 2020. The City Council considered the matter about three weeks later and followed suit on a unanimous vote. In July, the Maizes and the McQuains filed a petition for judicial review of the City Council's action, as provided in K.S.A. 12-760. See *Evans v. City of Emporia*, 44 Kan. App. 2d 1066, 1069, 243 P.3d 374 (2010) (statute covers city commission decision granting conditional use permit); *Rodrock Enterprises, L.P. v. City of Olathe*, 28 Kan. App. 2d 860, 862, 21 P.3d 528 (2001) (planning commission decision). In the district court, the homeowners and the City relied on the record compiled during the municipal proceedings and offered no additional evidence. The district court granted the City's motion for summary judgment in a lengthy order entered in August 2021. The Maizes have appealed the district court's ruling.

LEGAL ANALYSIS

A municipality's decision to rezone a particular tract of land entails a quasi-judicial function rather than a purely legislative one, such as adopting generally applicable zoning or land use plans. *Golden v. City of Overland Park*, 224 Kan. 591, 597, 584 P.2d 130 (1978); *Lambert v. City of Leawood*, No. 121,649, 2020 WL 5491377, at *3 (Kan. App. 2020) (unpublished opinion). Nonetheless, the courts accord exceptional deference to those determinations and will not disturb them as long as they are reasonable. *Golden*, 224 Kan. at 595-96; *Rodrock Enterprises*, 28 Kan. App. 2d at 863; *Ternes v. Board of Sumner County Comm'rs*, No. 119,073, 2020 WL 3116814, at *9 (Kan. App. 2020) (unpublished opinion). In this context, reasonableness entails a broad range of decision-making, so a municipality acts unreasonably only if the outcome "'lies outside the realm of fair debate'" as to what may be reasonable. *Golden*, 224, Kan. at 596 (quoting *Gaslight Villa, Inc. v. City of Lansing*, 213 Kan. 862, Syl. ¶ 3, 518 P.2d 410 [1974]). The district court and any reviewing appellate court may not substitute their own views of what may or may not be appropriate—that is, how those judges would vote were they elected

4

members of the municipal body making the decision. *143rd Street Investors v. Board of Johnson County Comm'rs*, 292 Kan. 690, 710, 259 P.3d 644 (2011).

A presumption of reasonableness attaches to rezoning decisions. In sum, we should not find a rezoning decision to be "'unreasonable unless clearly compelled to do so by the evidence.'"*143rd Street Investors*, 292 Kan. at 710 (quoting *Combined Investment Co. v. Board of Butler County Comm'rs*, 227 Kan. 17, 28, 605 P.2d 533 [1980]). As the party challenging the rezoning, the Maizes bore the burden of proving unreasonableness in the district court by a preponderance of the evidence. See *143rd Street Investors*, 292 Kan. at 710; *Golden*, 224 Kan. at 595.

To guide the courts in channeling the reasonableness standard, the Kansas Supreme Court has recognized a series of nonexclusive factors that may be considered:

• The character of the neighborhood; and how nearby properties are zoned and used;

• The suitability of the rezoned property for the uses to which it will be restricted;

• Whether the rezoning will diminish the value of or otherwise detrimentally affect nearby property, including the hardship on individual landowners, as compared to any benefit in public health, safety, or welfare;

• The length of time the subject property has remained vacant as zoned;

• The recommendations of permanent or professional staff; and

• Whether the rezoning conforms to the municipality's master land use plan.

*Golden*, 224 Kan. at 598; see *143rd Street Investors*, 292 Kan. at 705 (encouraging use of *Golden* factors); *Ternes*, 2020 WL 3116814, at *10 (recognizing *Golden* factors); *Sechrest, LLC v. City of Andover*, No. 118,052, 2018 WL 4655611, at *4 (Kan. App. 2018) (unpublished opinion) (recognizing *Golden* factors).

5

When considering a motion for summary judgment, the district court must construe the evidence in the best light for the nonmoving party, here the Maizes, and give that party the benefit of any reasonable inferences. *Trear v. Chamberlain*, 308 Kan. 932, 935-36, 425 P.3d 297 (2018); *Shamberg, Johnson & Bergman, Chtd. v. Oliver*, 289 Kan. 891, 900, 220 P.3d 333 (2009). The party seeking summary judgment, here the City, has to show that even taking the evidence in that light, there are no genuine disputes over any material facts and it is entitled to judgment as a matter of law. *Trear*, 308 Kan. at 935; *Shamberg*, 289 Kan. at 900. An appellate court applies the same standards in reviewing a challenge to the district court's entry of summary judgment. We, therefore, owe no particular deference to the district court's ruling, since it effectively applies the controlling legal principles to a set of undisputed facts. See *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 584, 214 P.3d 1173 (2009).

As we have said, the parties have agreed the universe of relevant evidence resides in the record compiled in the City's consideration of the developer's plan and rezoning request. The Maizes suggest that because there were differing views expressed to the planning commission and the City Council, the district court faced disputed facts precluding summary judgment. But that misapprehends the nature of the evidentiary record and the scope of judicial review.

The only evidence before both the district court and us is the record from the municipal proceedings, and the content of that record is undisputed. The judicial question is whether that evidence, taken as a whole, negates the presumption of reasonableness and shows the rezoning to be unreasonable beyond any fair debate. Any disparate views contained in the record of the municipal proceedings inform the summary judgment determination but do not prelude summary judgment. The district court and a reviewing appellate court are "limited to determining whether facts could reasonably have been found by the [governing] body to justify its decision." *Golden*, 224 Kan. at 596. As *Golden* went on to explain, the courts do not weigh the evidence presented to the

6

municipality and will not alter the outcome if it reflects a result that could be fairly debated. 224 Kan. at 595. In other words, a municipality's decision must be upheld so long as the determination rests on a plausible basis and cannot be characterized as arbitrary or wholly eccentric.

We readily conclude the City Council's decision to rezone the 13.5-acre tract came well within the realm of fair debate, given the evidentiary record. Without rehashing all of the facts, we find the Maizes and other homeowners in the Mission Heights subdivision offered either speculative objections to the rezoning or ones the developer effectively defused. For example, the developer agreed to seek a reversion to the original R-1 zoning if it didn't go forward with its proposed plan. And the City Council included that as a condition in the rezoning ordinance. The type of housing—single family residences—and the density of the units conformed to other developments in the vicinity, so the plan didn't substantially change the overall character of the area. The Mission Heights residents didn't substantiate their fears of visual or noise pollution.

The City planning staff opposed the rezoning because it was an atypical use of the RP-2 classification. The opposition seemed to be based predominately, if not exclusively, on a general bureaucratic objection rather than any specific harm the change would pose to the livability or ambience of Mission Heights or the surrounding neighborhoods. Likewise, the opponents of the rezoning offered no evidence the developer's plan for the tract, implemented with the RP-2 classification, would decrease property values in Mission Heights.

Under the circumstances, the City's decision to approve rezoning the tract to the RP-2 residential classification not only looks to be fairly debatable but appears to reflect the more compelling side of the debate. We find no error in the district court's decision to enter summary judgment for the City.

Affirmed.