MAURICE CALLAHAN & SONS, INC. *vs.* OUTDOOR
ADVERTISING BOARD & another.[1]

Suffolk.    December 10, 1980. — October 28, 1981.

Present: BROWN, ROSE, & PERRETTA, JJ.

*Constitutional Law*, Freedom of speech and press, Outdoor advertising.
*Billboard. Zoning*, Billboard.

In a proceeding before the Outdoor Advertising Board on applications to
   renew permits for certain commercial billboards, there was sufficient
   evidence to warrant the board's determination that the signs in ques-
   tion did not relate to the premises on which they were located and thus
   were within the board's jurisdiction to regulate under G. L. c. 93,
   §§ 29-30. [537]
A section of a town's zoning by-law regulating signs was applicable to
   signs erected before its adoption where the by-law expressly provided
   that any protection of existing uses did not apply to "billboards, signs
   and other advertising devices." [537-538]
A section of a town's zoning by-law which effectively prohibited off-
   premises signs was a constitutionally permissible regulation of the First
   Amendment right of a corporation owning commercial billboards to
   engage in commercial speech. [538-542]

CIVIL ACTION commenced in the Superior Court on May
24, 1978.

The case was heard by *Adams*, J., on motion for sum-
mary judgment.

*Patricia S. Nelson* (*Mary K. Ryan* with her) for the plain-
tiff.

*Anne Rogers*, Assistant Attorney General, for Outdoor
Advertising Board.

ROSE, J.  The plaintiff, a corporation that owns commer-
cial billboards, appeals from a judgment of the Superior
Court granting the defendant Outdoor Advertising Board's

---

[1] Town of Lenox.

(board) motion for summary judgment. The effect of the judgment was to affirm the board's summary decision, rendered pursuant to the board's adjudicatory rule 8.15, 311 Code Mass. Regs. § 1.03(1) (1978), to deny the plaintiff's applications to renew permits for four off-premises signs maintained by it in commercial and industrial districts in the town of Lenox (town).[2] The board, in a decision dated April 18, 1978, had found that the plaintiff's signs were in violation of the board's regulation 4(g), see 311 Code Mass. Regs. § 3.04(7) (1978), which requires that signs conform to local by-laws. The plaintiff petitioned for judicial review of the board's decision under G. L. c. 30A, § 14, and the judge granted the board's motion for summary judgment, affirming the decision of the board.

The plaintiff contends, as a preliminary matter, that because the board did not establish that the four signs were off-premises signs, it lacked jurisdiction over the signs under G. L. c. 93, §§ 29-30. Sections 29 and 30 concern the board's power to regulate billboards, signs and other advertising devices, and make clear that the board does not have authority to regulate on-premises signs. See *Attorney Gen. v. J.P. Cox Advertising Agency*, 298 Mass. 383 (1937). The board determined, however, that the record, which includes diagrams of the areas in which the particular signs are located, clearly established that each of the signs was of the off-premises type. This determination was adequately supported by the evidence, and we therefore conclude that permits issued by the board would be necessary to maintain the signs lawfully. See 311 Code Mass. Regs. § 3.01 (1978).

We also find no merit in the plaintiff's argument that the town's sign by-law does not apply to the four signs since

---

[2] Under G. L. c. 93, § 29, the town must receive notice of a pending application for a permit at least thirty days before the issuance of a permit. If no objection to the application is received by the board, a permit is issued unless the sign in question does not conform to the requirements of G. L. c. 93, §§ 29 through 33, inclusive. The Lenox selectmen seasonably notified the board that they objected to the applications here in question.

they were erected before its adoption. Section 5 of the town's zoning by-law specifies the scope of protected non-conforming use status for buildings and uses. Section 5.6 expressly provides that any protection of existing uses does not apply to "billboards, signs and other advertising devices." While former versions of the sign by-law may have provided some protection for pre-existing nonconforming signs, § 5.6, enacted at a May 6, 1977, town meeting, clearly terminated such protection. Nothing in the legislative history of the sign by-law or in its language indicates otherwise. We hold, therefore, that the requirements of the by-law apply to the plaintiff's signs.

We are confronted squarely, then, with the plaintiff's contention that the by-law, forbidding virtually all off-premises signs, is unconstitutional because it offends the First Amendment's guarantee of free speech as applied to the States and municipalities through the Fourteenth Amendment.[3] The board held that the First Amendment issue was immaterial and the judge apparently concluded that the board disposed of the issue properly under the authority of *John Donnelly & Sons* v. *Outdoor Advertising Bd.*, 369 Mass. 206 (1975). He held that the board was entitled to a judgment as matter of law. We hold that the by-law does not infringe the plaintiff's First Amendment rights and affirm the judgment of the Superior Court.

It is useful to summarize the essential provisions of the by-law. In relevant part, § 7.1.1 provides that no signs or advertising devices of any kind shall be erected on any premises or affixed to any building except as specifically permitted in other sections of the by-law. Section 7.8.1 provides that in residential districts one sign, not exceeding three square feet, or two signs, not exceeding two square feet each, are permitted for each lot. The content of such

---

[3] Since neither party in this case has addressed itself to the protection provided by Article XVI of the Declaration of Rights of the Massachusetts Constitution, the provision of the Commonwealth's Constitution which is analogous to the First Amendment of the United States Constitution, no State constitutional issue is before the court.

signs is limited to the name of the occupant or the premises and the street address. Section 7.9.1, regulating signs in commercial and industrial districts, provides that signs in those districts *"shall relate to the premises on which they are located and shall only identify the occupancy of such premises or advertise the articles or services available within such premises"* (emphasis supplied). Section 7.9.2 provides standards regarding the number, size and location of signs permitted in commercial and industrial districts. Section 7.7.1, applying to signs in all districts, designates certain limited categories of signs exempted from the broad restrictions.[4] Notwithstanding these exceptions, the general effect

---

[4] The full text of § 7.7 provides as follows:

7.7    SIGNS IN ALL DISTRICTS

7.7.1 (1) One "For Sale" or "For Rent" sign, not more than three (3) square feet signboard area and which advertises for sale or for rent only the premises on which the sign is located.

(2) One Building Contractor's sign (which may include subcontractor and architectural information) on a building while actually under construction, not exceeding six (6) square feet in signboard area.

(3) The Zoning Board of Appeals in granting a Special Permit or Variance may issue a permit for a sign which does not conform to the requirements of the district in which it is located. On the premises with a non-conforming use the Zoning Board of Appeals may issue a permit for a sign which does not conform to the requirements of the district in which it is located.

(4) For churches and institutions, signs shall be governed by the provisions of the district in which they are located except that in any district two bulletin or announcement boards or identification signs up to ten (10) square feet in size are permitted.

(5) Directional signs limited to the name of the business on public property or on private property not contiguous with the advertiser's lot may be erected by special permission of the Selectmen, after review by the Planning Board and if within the Historic District by the Historic District Commission. Such signs shall not exceed six (6) square feet of signboard area and shall be so placed or hooded that the light shall not be noxious or offensive to the neighborhood.

(6) In Commercial Districts, temporary signs not exceeding 1/12th of the permitted sign area in size may be affixed (not hung) to a permitted sign or to a building. This includes signs advertising "Sale", "Grand Opening," "Clearance" and the like.

of the by-law is to prohibit almost all off-premises signs while regulating the size, number and location of on-premises signs.

In *Metromedia, Inc.* v. *San Diego*, 453 U.S. 490 (1981), the Supreme Court recently considered a First Amendment challenge to an ordinance which regulated billboards in much the same manner as the by-law at issue here. The Court focused on the distinction between the constitutional protection afforded commercial as opposed to noncommercial speech and, recognizing that "the former could be forbidden and regulated in situations where the latter could not be," considered separately the effect of the ordinance on commercial and noncommercial speech. *Id.* at 506 (plurality opinion). The Court concluded that the San Diego ordinance was constitutional insofar as it regulated commercial speech but was invalid under the First and Fourteenth Amendments to the extent that it regulated noncommercial speech. *Id.* at 490.

Unlike the situation in *Metromedia*, in which the Court noted that the appellant's billboards conveyed a "substantial amount" of noncommercial speech in addition to commercial advertising, *Id.* at 504, the plaintiff here does not have standing to argue that its First Amendment rights in noncommercial speech are violated by the sign by-law. The renewal permits at issue here concern four off-premises advertising billboards located in commercial or industrial districts of the town of Lenox. There is no evidence in the record to indicate that any signs owned by the plaintiff now display, or have displayed in the past, anything but commercial messages.[5] Moreover, since the by-law as applied here concerns only the plaintiff's interests in commercial

---

[5] At the hearing before the board, the plaintiff did make an offer of proof in the form of a summary of testimony from a local public office holder urging the importance of outdoor advertising in conducting an election and in effectively disseminating information on political issues and candidates during an election. Yet the offered testimony included no suggestion that the plaintiff had in fact used its signs as a forum for such noncommercial speech.

speech, the plaintiff cannot rely on the overbreadth doctrine to assert that the by-law is unconstitutional on its face because it substantially infringes the First Amendment rights of parties not before the court. *Bates* v. *State Bar of Ariz.*, 433 U.S. 350, 380-381 (1977); see *Metromedia*, 453 U.S. at 504 n. 11. We therefore conclude that the plaintiff has standing to assert only that its right to engage in commercial speech is violated by the by-law's general prohibition of off-premises signs. Cf. *John Donnelly & Sons* v. *Campbell*, 639 F.2d 6, 15 (1st Cir. 1980), aff'd., 453 U.S. 916 (1981) (before considering the noncommercial speech aspects of a Maine statute regulating billboards, the Court of Appeals observed that, since twenty-four percent of the messages carried on Donnelly's billboards were noncommercial in nature, there was "more involved . . . than commercial speech"). Accordingly, we do not pass judgment on the by-law's validity as it relates to noncommercial speech; nor do we address the argument that certain provisions of the by-law, not involved in the present case, are unconstitutional as a prior restraint on First Amendment freedoms because they vest unbridled discretion in administrative bodies to determine who may use the sign forum and for what purpose.

We do confront, however, the question whether the by-law's general ban on off-premises signs, upon which the board justified its refusal to renew the plaintiff's billboard permits, is a constitutional regulation of the plaintiff's right to engage in commercial speech. It is now settled that speech proposing no more than a commercial transaction does enjoy a substantial degree of First Amendment protection, *Virginia State Bd. of Pharmacy* v. *Virginia Citizens Consumer Council*, 425 U.S. 748 (1976), albeit a more limited measure than that accorded to noncommercial speech. See *Ohralik* v. *Ohio Bar Assn.*, 436 U.S. 447, 456 (1978); *Young* v. *American Mini-Theatres, Inc.*, 427 U.S. 50, 69 n.32 (1976). Generally, to determine whether commercial speech is protected it is necessary to balance First Amendment interests against other relevant societal values, taking

into account "the nature both of the expression and of the governmental interests served by its regulation." *Central Hudson Gas & Elec. Corp.* v. *Public Serv. Commn.*, 447 U.S. 557, 563 (1980). In *Central Hudson,* the Supreme Court adopted a four-part test designed to reconcile the various competing interests:

> "At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." *Id.* at 566.

In *Metromedia* this test was applied to a San Diego ordinance which was similar to the sign by-law now in question. The Court there found that the ordinance was no broader than necessary to meet the government's substantial interests in traffic safety and the appearance of the city, and accepted the Legislature's judgment that the general prohibition of off-premises signs directly advances those interests. *Metromedia,* 453 U.S. at 540-555 (dissenting opinion of Stevens, J., joining in Parts I-IV of plurality opinion). Following that decision, we are compelled to conclude that the Lenox by-law likewise satisfied the constitutional requirements of *Central Hudson,* and, therefore, hold that it is a valid regulation of the plaintiff's exercise of First Amendment free speech rights.

*Judgment affirmed.*