No. 54,589

ROBERT L. RIEKE BUILDING CO., INC., *Plaintiff-Appellant,* v. CITY OF OVERLAND PARK, KANSAS, *Defendant-Appellee/Cross-Appellant.*

(657 P.2d 1121)

Opinion filed January 14, 1983.

*John Anderson, Jr.,* of Anderson, Granger, Nagels and Lastelic, Chartered, of Overland Park, argued the cause and was on the brief for the appellant.

*Neil R. Shortlidge,* first assistant city attorney, argued the cause and was on the brief for the appellee, cross-appellant.

The opinion of the court was delivered by

PRAGER, J.: This is an action for declaratory judgment and injunctive relief in which plaintiff attacks the constitutional validity of an Overland Park city zoning ordinance regulating "attention attracting devices" on property located within the city. The case was submitted to the trial court for decision without oral testimony on a stipulation of facts prepared by the parties.

The undisputed facts are as follows: Plaintiff, Robert L. Rieke Building Company, Inc., is located in Johnson County and is engaged in the business of renting and furnishing searchlight services for advertising and promotional purposes. Defendant, City of Overland Park, has adopted zoning regulations pursuant to K.S.A. 12-707 *et seq.,* which regulations have been codified as which Title 18 of the Overland Park Municipal Code (OPMC). The zoning regulations involved in this case are the following:

"Chapter 18.02
"DEFINITIONS

. . . .

"18.02.590 Sign.

" 'Sign' means any words, numerals, figures, devices, designs, trademarks or

logos, which are painted on or attached to a frame, pole or brackets and mounted on or affixed to a building or the ground, by which information is made known to the public outside a building and including but not limited to the following:

"Attention Attracting Device: 'Attention attracting device' means any flashing, blinking, rotating or moving action, banner, representation of animal or human forms, searchlight or balloons designed or intended to attract the attention of the public to an establishment or to a sign.

.  .  .  .

"Time and/or Temperature Instrument: 'Time and/or temperature instrument' means a sign displaying only time and/or temperature information with no additional advertising or comments."

"18.02.730 Variance.

" 'Variance' means a variation from a specific requirement in this title, as applied to a specific piece of property, as distinct from rezoning."

"Chapter 18.36
"SPECIAL USES

"18.36.010 Designated.

"Any of the following uses may be located in any district by special use permit of the City Council after public hearing, notification of adjacent and abutting property owners, and after recommendation of the Planning Commission, under such conditions as to operation, site development, signs, and time limit as may be deemed necessary in order that such use will not seriously injure the appropriate use of the neighboring property, and will conform to the general intent and purpose of this title and shall comply with the height and area regulations of the district in which they may be located unless otherwise specifically granted.

.  .  .  .

"29. The City Council may upon application by the proponent, issue a special use permit for the use of a specified parcel of land for such temporary short-term uses as trade shows, street fairs, expositions, *promotional ventures* and entertainment, without publication or posted notice and without referral to the Planning Commission, provided the following conditions are met:

"A. The applicant shall submit in written form a complete description of the proposed use, including estimated accumulation of automobiles and persons, hours of operation, and other characteristics and effects on the neighborhood;

"B. The short-term special use shall not be operated longer than ten consecutive days;

"C. Upon the cessation of the short-term special use, all materials and equipment shall be promptly removed and the property restored to its normal condition. If, after giving full consideration to the effect of the requested special use on the neighborhood and the community, the Council deems the special use reasonable, the special use permit for the short-term use may be approved. Conditions of operation, provision for surety bond, and other reasonable safeguards may be written into the special use permit. Such permit may be approved in any zoning district, and the fee set out in Chapter 18.62 shall be applicable." (Emphasis supplied.)

"18.52.110 Additional regulations applicable to all zoning districts.

. . . . .

"E. Any attention attracting device as defined in Section 18.02.590 is prohibited from use."

"18.62.020 Fees for amendments and other actions.

"Fees for all land use action shall be as specified below . . . .

"Special Use Permit $100"

On February 4, 1980, the city approved a special use permit to allow CMC Stereo Company to operate searchlights. Plaintiff Rieke furnished the searchlights for CMC Stereo Company. On May 19, 1980, the city approved another special use permit for plaintiff Rieke to furnish searchlights to CMC Stereo Company. On January 26, 1981, Rieke, through counsel, requested the City Planning Commission to amend the city zoning regulations as they pertain to searchlights. The City Planning Commission directed Rieke to present information to the staff and the staff would then report to the commission. No information was furnished to the staff by Rieke.

At no time has the city denied a special use permit requested by Rieke, or any of its clients, to operate searchlights. The Overland Park city council has regularly scheduled meetings on the first three Mondays of each month. Special meetings may be called by the mayor, or by any two of the ten members of the city council, upon twenty-four hours' notice of the time and place of the meeting and the subject to be discussed. In order for a short-term special use permit requested under the ordinance (18.36.010[29]) to be considered at a regularly scheduled city council meeting, the application must be received prior to 11:30 a.m. on the preceding Thursday. In order for such request to be considered at a special meeting, the application must be received at the time the special meeting is called. On a number of occasions special meetings of the city council have been called to consider special use permits under city ordinance 18.36.010(29).

The searchlights available for rental and operation from the plaintiff are war surplus searchlights that were designed and used in World War II for anti-aircraft warfare. Each light is approximately 5 feet in diameter and casts a beam of light 5 feet in width into the sky. Depending on climate and weather conditions, the light can be seen from 30 to 40 miles. Each searchlight is designed to develop 800,000,000 candle power. Each searchlight is powered by a 6-cylinder Hercules motor and generator and the

light is from a 90-volt and 150-amp. electrical energy fired by a carbon arc. Plaintiff has eight such lights, six of them mounted on separate flat-bed trailers and two each mounted on 2-ton trucks. Each light weighs one ton and the generator and motor weigh 1½ tons.

The searchlights available for rental from the plaintiff have the following operational characteristics. The beam of light is projected into the sky at a constant width of a 5 foot wide beam in a nearly vertical extension, rotating to the extent that the furthermost reaches of the light make a circular movement. The projection of the light can be controlled as to width of the beam and the length of projection by adjustment of the shield or canopy over the arc light which regulates the reflection of the arc beam into the mirror bowl. The parties stipulated as to the testimony of various witnesses if they were actually called to the witness stand. There was a difference of opinion among the parties' expert witnesses as to whether the maintenance and operation of searchlights on a regular basis would distract and have a measurable adverse impact on the community and would lower the property value of nearby property.

The trial court considered the stipulation and found that the maintenance and operation of searchlights for promotional purposes *for short periods of time* at different locations would not have a measurable adverse impact on the valuation and marketability of nearby properties. However, the maintenance and operation of searchlights on a *regular* basis would have an adverse impact on the valuation and marketability of nearby commercial or residential properties. The trial court concluded that the proper operation of the searchlights in an upward direction in the sky does not, and would not, have an impact on the driving public in such manner as to create a public hazard in the driving of motor vehicles. The court further found that the procedure required to obtain a special use permit for the use of the searchlight was reasonable and not burdensome and that the $100 fee required by the city for special use permits is reasonable and not excessive. The court further found that by requiring a landowner desiring to operate searchlights to obtain a special use permit, the city has retained the flexibility to limit the operation of searchlights to particular locations, times, or circumstances at which the adverse impacts can be minimized.

The district court made, among others, the following conclusions of law:

"1. The Court has jurisdiction of the parties and the subject matter.

"2. Municipal ordinances are presumed to be constitutional.

"3. The City has police power which is wide in scope and the governing body may exercise broad powers to promote the health, morals, security and welfare of the parties.

"4. Once a subject is found to be within the scope of the state's police power, the only limitations upon the exercise of such power are that the regulations must have reference in fact to the welfare of society and must be fairly designed to protect the public against the evils which might otherwise occur. Within the limits, the legislature is the sole judge of the nature and extent of the measures necessary to accomplish its purpose. *Cardarella v. City of Overland Park* 228 Kan. 698.

"5. The operation of searchlights does not constitute commercial speech.

"6. With regard to the specific issue of the reasonableness of a municipal ordinance, if there is room for fair debate the Court will not substitute its own judgment of reasonableness for that of the legislative body charged with the primary duty and responsibility of determining the question of reasonableness. *City of Lyons v. Suttle,* 209 Kan. 735, 740 (1972).

"7. O.P.M.C. Title 18, when read *in pari materia,* does not absolutely prohibit the operation of searchlights within Overland Park. Searchlights may be operated, as they have in the past, upon approval of a special use permit pursuant to O.P.M.C. Section 18.36.010. The requirement of obtaining a special use permit, and the procedures relating thereto, cannot be held to be unreasonable as a matter of law.

"8. The fact that the City has chosen to limit the operation of searchlights to periods of not to exceed 10 days does not make the City's regulations unreasonable. A legislative body need not choose between eliminating a problem and doing nothing at all. *Eroznik v. City of Jacksonville,* 422 U.S. 205, 215, 45 L.Ed.2d 125, 95 S.Ct. 2268 (1975); *Hilton v. City of Toledo,* 405 N.E.2d 1047, 1050 (Ohio 1980).

"9. The pertinent portions of O.P.M.C. Title 18, specifically O.P.M.C. Section 18.36.010 (29) and O.P.M.C. Section 18.52.110, are hereby found to be valid and constitutional."

The trial court entered a declaratory judgment finding the zoning regulations set forth above to be valid and constitutional and denied injunctive relief to the plaintiff. The plaintiff brought a timely appeal to this court.

In the trial court and on the appeal, the plaintiff makes a three-pronged attack on the constitutionality of the city ordinances in question:

(1) The zoning regulations constitute an unreasonable and arbitrary use of the city's police power;

   (2) The zoning regulations deny equal protection of the law in that they are discriminatory in their application; and

   (3) The zoning regulations violate the plaintiff's constitutional right to freedom of speech.

We will consider each of these contentions separately.

The plaintiff's first point is that the zoning regulations in question are unreasonable and arbitrary because they fail to bear a substantial relation to any legitimate police power objective of the city. The trial court rejected this contention. In our judgment, the trial court correctly decided that issue. In *City of Baxter Springs v. Bryant,* 226 Kan. 383, 598 P.2d 1051 (1979), the court reviewed the guidelines which come into play when a court is called upon to determine the constitutionality of a statute or ordinance:

"1. The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution."

"2. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and, if there is any reasonable way to construe the statute as constitutionally valid, that should be done."

"3. Statutes are not stricken down unless the infringement of the superior law is clear beyond substantial doubt."

"4. The propriety, wisdom, necessity and expedience of legislation are exclusively matters for legislative determination and courts will not invalidate laws, otherwise constitutional, because the members of the court do not consider the statute in the public interest of the state, since, necessarily, what the views of members of the court may be upon the subject is wholly immaterial and it is not the province nor the right of courts to determine the wisdom of legislation touching the public interest as that is a legislative function with which courts cannot interfere."

"5. Once a subject is found to be within the scope of the state's police power, the only limitations upon the exercise of such power are that the regulations must have reference in fact to the welfare of society and must be fairly designed to protect the public against the evils which might otherwise occur. Within these limits the legislature is the sole judge of the nature and extent of the measures necessary to accomplish its purpose." Syl. ¶¶ 1, 2, 3, 4 & 5.

These principles have also been recognized by this court in *Cardarella v. City of Overland Park,* 228 Kan. 698, 620 P.2d 1122 (1980). The defendant city's zoning regulations must be considered with these general principles in mind.

We will now consider the plaintiff's specific arguments on the reasonableness of the zoning regulations. The plaintiff argues that the operation of searchlights is absolutely prohibited by OPMC Section 18.52.110 which provides in paragraph (E) that

any attention attracting device as defined in Section 18.02.590 is prohibited from use. An "attention attracting device" is defined in 18.02.590 to mean any flashing, blinking, rotating or moving action, banner, representation of animal or human forms, *searchlight* or balloons designed or intended to attract the attention of the public to an establishment or to a sign. Plaintiff's argument might have validity in the absence of zoning regulation 18.36.010, which covers the issuance of special use permits for temporary short-term uses, including promotional ventures. It is under that section that special use permits have been issued to the plaintiff in the past so that plaintiff's searchlights could be used at various places in the city on a short-term basis for promotional purposes. We agree with the position of the city that all of the various sections of the zoning regulations must be considered together and in the light of each other. Under the scheme of the Overland Park zoning regulations, a use requiring a special use permit is inherently one which is prohibited in an area. By creating the special use permit the governing body permits a use which would not otherwise be allowed. Thus, by authorizing the operation of searchlights by special use permit, the city is allowing a use which would otherwise be prohibited by other zoning regulations.

Section 18.36.010 lists the uses or categories of uses allowed by special use permits. The special section applicable here is (29) relating to temporary promotional usages. It should be noted that that section sets forth certain specific conditions required before a special use permit is to be issued: (1) The applicant is required to submit in written form the proposed use, including the estimated accumulation of automobiles and persons, hours of operation, and other characteristics and effects on the neighborhood; (2) the short-term special use shall not be operated longer than ten consecutive days; and (3) upon cessation of the short-term special use, all materials and equipment shall be promptly removed and the property restored to its original condition. The city council is authorized to approve a special use permit if it feels the special use to be reasonable after giving full consideration to the effect of the special use on the neighborhood and the community. Conditions of operation, provisions for surety bonds, and other reasonable safeguards may be written into the special permit.

We agree with the trial court that the operation of searchlights for promotional purposes may be allowed under that provision. It is clear that the plaintiff on a number of occasions has applied for and obtained special use permits for the use of its searchlights for promotional purposes. The plaintiff stipulated that it was notified by the city that searchlights could be operated if a special use permit was obtained. Moreover, the fact that the city has consistently interpreted its zoning regulations so as to authorize the operation of searchlights under a special use permit is itself significant. Under the doctrine of "operative construction," the interpretation placed upon legislation by the administrative agency whose duties are to carry the legislative policy into effect is entitled to great weight. *State v. Helgerson,* 212 Kan. 412, 413, 511 P.2d 221 (1973); *Cities Service Gas Co. v. State Corporation Commission,* 192 Kan. 707, 714, 391 P.2d 74 (1964). Judicial deference to the interpretation is especially appropriate in this case where it is the legislative body itself and not an administrative agency, that is giving effect to the interpretation.

We reject the contention of the plaintiff that searchlights may not be operated in Overland Park either with or without a special use permit. In this regard, it should be noted, however, that the city zoning regulations are not drafted as clearly as they might be drafted so as to eliminate any question about the applicability of the special use permit section to attention attracting devices. Perhaps an amendment to the city regulations to clarify this matter would be helpful to other citizens in future cases.

The plaintiff next contends that the zoning regulations are unreasonable and arbitrary because the regulation of searchlights and other attention attracting devices does not bear a real and substantial relation to any legitimate police power objective. One of the general principles noted above is that, once a subject is found to be within the scope of the state's police power, the only limitations upon the exercise of such power are that the regulations must have reference in fact to the welfare of society and must be fairly designed to protect the public against the evils which might otherwise occur. Within these limits the legislature is the sole judge of the nature and extent of the measures necessary to accomplish its purpose.

In this case, the trial court correctly found that, with regard to the specific issue of the reasonableness of a municipal ordinance,

if there is room for fair debate, the court will not substitute its own judgment of reasonableness for that of the legislative body charged with the primary duty and responsibility of determining the question of reasonableness. *City of Lyons v. Suttle,* 209 Kan. 735, 498 P.2d 9 (1972). The trial court concluded that the requirement of obtaining a special use permit for the operation of searchlights and the procedure relating thereto cannot be held to be unreasonable as a matter of law. Throughout America today, it is generally agreed that billboards and other forms of advertising may be regulated by a state or municipality under the police power. See for example *Metromedia, Inc. v. San Diego,* 453 U.S. 490, 69 L.Ed.2d 800, 101 S.Ct. 2882 (1981); *John Donnelly & Sons, Inc. v. Outdoor Advertising Board,* 369 Mass. 206, 339 N.E.2d 709 (1975); *Maurice Callahan & Sons v. Outdoor Adver. Bd.,* _____ Mass. App. Ct. _____, 427 N.E.2d 25 (1981); *State v. Lotze,* 92 Wash. 2d 52, 593 P.2d 811 (1979). Generally, such regulations have been held to serve three legitimate governmental purposes: promotion of traffic safety, aesthetic considerations, and the preservation of property values. See generally, 1 Anderson, American Law of Zoning 2d § 7.01 *et seq.* (1976) for a discussion on the subject. See also, Charles S. Rhyne, The Law of Local Government Operations § 19.39, pp. 506-11 (1980).

City ordinances have also been upheld which regulate flashing, blinking, fluctuating, animated, or portable outdoor advertising signs. In this regard see, *General Outdoor Adv. Co. v. Dept. Pub. Works,* 289 Mass. 149, 193 N.E. 799 (1935) (animated electric sign 85 feet long and 65 feet high); *Hilton v. City of Toledo,* 62 Ohio St. 2d 394, 405 N.E.2d 1047 (1980) (flashing portable advertising signs); *Rent-A-Sign v. City of Rockford,* 85 Ill. App. 3d 453, 406 N.E.2d 943 (1980) (flashing and colored lights on moving signs); *Art Neon Co. v. City and County of Denver,* 488 F.2d 118 (10th Cir. 1973) (flashing, blinking, fluctuating, animated, or portable outdoor advertising signs).

The evidence in this case includes the testimony of several expert witnesses to the effect that the maintenance and operation of searchlights on a regular basis would have a measurable adverse impact on the valuation and marketability of nearby residential properties. Although the courts have not been in complete accord in the past, the current trend of the decisions is to permit regulation for aesthetic reasons. See *Metromedia, Inc. v.*

*San Diego,* 453 U.S. 490. Likewise, there was evidence in the case from which the city council could have concluded that searchlights and other attention attracting devices may distract motorists and create a traffic hazard. Although the trial court concluded that the proper operation of a searchlight in an upward direction into the sky would not have an adverse impact on the driving public in such way as to create a public hazard in the driving of motor vehicles, the city could have reasonably concluded otherwise. The fact that the trial court may have disagreed with the city council's judgment is not controlling. It is the reasonableness of the conclusions of the city council which determines the reasonableness of the zoning regulations.

We have concluded that the trial court properly found that the Overland Park zoning regulations, as they relate to the operation and regulation of plaintiff's searchlights, constituted a reasonable exercise of the city's police power; that searchlights may be maintained and operated within the city of Overland Park upon obtaining a special use permit for their use; and that the zoning regulations in question bear a real and substantial relation to legitimate police power objectives.

Plaintiff next attacks the constitutionality of the zoning ordinances on the basis that they deny equal protection of the law in that they are discriminatory in their application. Specifically, it is the contention of plaintiff that the zoning regulations create an unreasonable classification which discriminates between "attention attracting devices" and "time and temperature instruments." Under the zoning regulations, time and temperature signs and instruments are permissible. The trial court rejected this contention and we agree. Under the definition contained in the zoning regulations, time and temperature signs are not included as a part of the class of attention attracting devices, but rather form a separate class. We have no hesitancy in holding that searchlights and time and temperature signs are substantially different and may be regulated in different ways. Plaintiff's searchlights are visible for a distance of 30 to 40 miles with 800,000,000 candle power. There was evidence that the maintenance and operation of plaintiff's searchlights would have an adverse impact on the marketability of nearby properties. There is no evidence whatsoever in the record that the operation of a time and temperature sign creates traffic safety hazards or has any adverse impact on

adjoining property. The purpose of a time and temperature sign is primarily to display the time and temperature and thus inform the public. We hold that the city's zoning regulations in question do not deny equal protection of the law.

The final point raised by the plaintiff is that the zoning regulations are unconstitutional, because they infringe upon freedom of speech guaranteed under the First and Fourteenth Amendments to the United States Constitution and § 11 of the Bill of Rights of the Kansas Constitution. As noted above, the use of searchlights is not totally prohibited within the City of Overland Park. A special permit for the use of searchlights may be obtained under the special use permit section of the zoning regulations. Although it may be conceded that, under certain circumstances, types of attention attracting devices may fall within the category of symbolic commercial speech, and assuming arguendo that the operation of searchlights constitutes commercial speech, we find that the zoning regulations before us in this case do not unconstitutionally infringe upon plaintiff's rights.

Commercial speech has been defined as "expression related solely to the economic interests of the speaker and its audience." *Central Hudson Gas v. Public Service Comm'n,* 447 U.S. 557, 561, 65 L.Ed.2d 341, 100 S.Ct. 2343 (1980). Commercial speech is entitled to some protection under the First Amendment to the Constitution of the United States, but it is not as highly protected as some other forms of pure speech. The validity of a restriction on commercial speech is measured by a test stated by the court in *Central Hudson Gas v. Public Service Comm'n,* 447 U.S. at 566.

"In commercial speech cases, then, a court-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest."

See also *Metromedia, Inc. v. San Diego,* 453 U.S. 490 (plurality opinion of White, J.).

Assuming that the use of searchlights constitutes commercial speech, it is clear to us that the zoning regulations in question pertaining to attention attracting devices and searchlights satisfy the test discussed above. Searchlights with 800,000,000 candle

power and visible for a distance of 30 to 40 miles used for promotional purposes are obviously designed for the purpose of attracting the attention of persons not on the premises. If they did not do so, they would not be used for promotional ventures. The governmental body of the city has made a reasonable judgment that regulation of the use of searchlights will promote traffic safety and also improve the aesthetic appearance of the city. In our judgment, the limitations on the use of searchlights reasonably advance a public interest and are not more extensive than are necessary to serve that interest. Nothing in the record before us compels or suggests that the interests of the public would be served as well by some lesser regulation. Thus, assuming the use of searchlights constitutes commercial speech, we find no encroachment thereon or any unreasonable regulation thereof.

We thus conclude that the zoning regulations before us are valid and constitutional and fall within the police power of the City of Overland Park. In view of this decision, we need not consider the issues raised in the cross-appeal of the city.

The judgment of the district court is affirmed.