The Honorable Mark Parkinson State Senator, Twenty-Third District 15587 S. Greenwood Olathe, Kansas 66062
Dear Senator Parkinson:
You request an opinion concerning whether K.S.A. 1992 Supp. 59-2123(a)(1) which prohibits a person, other than a licensed child placement agency or the department of social and rehabilitation services, from advertising for adoption violates the first amendment to the United States constitution.
K.S.A. 1992 Supp. 59-2123 provides, in relevant part, as follows:
"(a) Except as otherwise provided in this section:
 "(1) No person shall advertise that such person will adopt, find an adoptive home for a child or otherwise place a child for adoption;
. . . .
 "(b) The provisions of subsection (a)(1) shall not apply to a licensed child placement agency operating as authorized by Kansas law or to the department of social and rehabilitation services.
"(c) As used in this section:
 "(1) `Advertise' means to communicate by newspaper, radio, television, handbills, placards or other print, broadcast or electronic medium;
 "(2) `person' means an individual, firm, partnership, corporation, joint venture or other association or entity. . . ."
The Kansas adoption and relinquishment act addresses both independent adoptions and agency adoptions. K.S.A. 1992 Supp. 59-2112. An independent adoption occurs when the child's birth parent or some nonagency person in loco parentis consents to an adoption. An independent adoption does not require the services of a licensed agency to serve as an intermediary between the birth and adoptive parents. An agency adoption occurs when an entity licensed by the state is authorized to place children for adoption and can consent to the adoption. K.S.A. 1992 Supp. 59-2112(f). The licensed agency is the intermediary between the birth and the adoptive parents. Both types of adoption require investigation and a report to the court concerning the petitioner's ability to care for the child as well as background information on the child and the birth parent(s). K.S.A. 1992 Supp. 59-2130 and 59-2132.
In 1986 nearly one-third of all states, including Kansas, had express limitations on adoption advertising in order to curb black-market activities involving the payment of large fees by hopeful adoptive parents to unscrupulous intermediaries and questionable child placements.Comment, Advertising for Adoption Placement, 25 Duquesne L.Rev. 129, 132, 140 (1986). The purpose of the advertisement restriction in K.S.A. 1992 Supp. 59-2123 is to discourage marketing of children across state lines and circumventing the laws of states where non-agency adoptions are not legal. Minutes, House Committee on Public Health and Welfare, January 31, 1984, attachment 3. Dr. Robert Harder, the secretary of the department of social and rehabilitations services, testified that the majority of advertisements were placed by individuals from out of state who were seeking prospective birth parents. Minutes, House Committee on Public Health and Welfare, January 31, 1984, attachment 3.
With this background in mind, we consider whether the advertisement prohibition violates the first amendment to the United States constitution as applied to the states through the fourteenth amendment. The first
amendment prohibits abridging the freedom of speech, however, "commercial speech" which is defined as expression relating solely to the economic interest of the speaker and its audience is not as highly protected as other forms of speech. Central Hudson Gas and Electric Cooperation v.Public Service Commission, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341
(1980), Robert Rieke Bldg. Co. v. City of Overland Park, 232 Kan. 634
(1983). Advertising in connection with adoptions is "commercial speech."Adoption Hotline Inc. v. State, 402 So.2d 1307 (Fla.Dist.Ct.App. 1981). However, because society has a strong interest in the free flow of commercial information, a state may not completely suppress the dissemination of truthful information about lawful activities. VirginiaState Board of Pharmacy v. Virginia Citizens Consumer Council,425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Commercial expression not only serves the economic interest of the speaker but also assists consumers and furthers the societal interest in the fullest possible dissemination of information. Central Hudson.
The validity of a restriction on commercial speech is measured by a test stated in Central Hudson. In order for commercial speech to be protected under the first amendment it must concern lawful activity and not be misleading. The next question is whether the asserted governmental interest is substantial. If both inquiries are answered affirmatively, the court must determine whether the regulation directly advances the government interest asserted and whether it is not more extensive than is necessary to serve that interest. Restrictions must directly advance the state interest and if the government interest could be served as well by a more limited restriction on commercial speech, any excess restriction will fail. Central Hudson. There has to be a "fit" between legislative ends and the means chosen to accomplish those ends — a fit that is not necessarily perfect, but reasonable. Board ofTrustees, S.U.N.Y. v. Fox, 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388
(1989).
In Adoption Hotline, the court concluded that a permanent injunction against all advertising by an unlicensed adoption placement referral service was too broad and, therefore, was an impermissible violation of the first amendment. Without a showing by the state that a narrower restriction would be insufficient to protect the government's interest or that the advertisement was misleading, a complete prohibition was unconstitutional. Following the reasoning in the Adoption Hotline case and applying the Central Hudson test to K.S.A. 1992 Supp. 59-2123(a)(1), it is our opinion that the prohibition violates the first amendment because it is too broad to advance the asserted state's interest. There is no doubt that the state has a substantial interest in the welfare of Kansas children and insuring that their placement with adoptive parents is in their best interest as well as preventing any profiteering in this area. However, independent adoptions are legal in this state and, assuming that the advertisement is not misleading, the complete prohibition of all advertising (except for certain entities) is too broad to accomplish the state's purpose. While the intent of the statute was to prevent out of state persons from placing advertisements, the prohibition also applies to Kansas attorneys or Kansas adoptive parents seeking to find Kansas birth mothers who may be interested in giving up their children for adoption. In short, the prohibition cuts too wide a swath and thwarts the societal interest in the dissemination of information which the first amendment was designed to protect. CentralHudson. (We offer no opinion concerning whether the legislature could prohibit advertising solely from persons out of state. We also do not here address advertising for surrogate mothers.)
The state may always ban communication which is more likely to deceive the public than to inform it. Ohralik v. Ohio State Bar Association,436 U.S. 447, 98 S.Ct. 1917, 56 L.Ed.2d 444 (1978). However, if the advertisement is not misleading, the state cannot impose a total prohibition on persons who are desirous of finding birth mothers interested in giving up their children for adoption. Consequently, it is our opinion that K.S.A. 1992 Supp. 59-2123(a)(1) violates the first
amendment to the United States constitution.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Mary Feighny Assistant Attorney General
RTS:JLM:MF:jm