(948 P.2d 179)
No. 74,643

BLOCKBUSTER VIDEO, INC., *Appellant*, v. CITY OF OVERLAND PARK, KANSAS, *Appellee*.

Opinion filed May 30, 1997.

*Timothy J. Sear*, of Polsinelli, White, Vardeman & Shalton, P.C., of Overland Park, for appellant.

*Neil R. Shortlidge*, of Stinson, Mag & Fizzell, P.C., of Overland Park, and *J. Bart Budetti*, senior assistant city attorney, for appellee.

Before BRAZIL, P.J., ELLIOTT and KNUDSON, JJ.

ELLIOTT, J. Blockbuster Video, Inc., (Blockbuster) appeals the trial court's ruling that Overland Park (City) did not improperly deny Blockbuster's revised final development plan because the proposed continuous awning violated the City's guidelines for shopping center design.

We affirm.

Blockbuster leased property in a Wal-Mart center in Overland Park. Blockbuster has a standard design package to identify its stores to the public, and its standard lease with franchisees provides it may terminate a lease if Blockbuster cannot use that standard

design package. The record indicates that Blockbuster has 30 stores in the Kansas City metropolitan area—not one store has all features of the complete standard design package.

The City regulates zoning and has a master plan ordinance supplemented by guidelines adopted by resolution. The guidelines are recommendations which the City may choose not to enforce.

As landlord, the Wal-Mart center developer promulgated tenant design criteria, including a requirement that any building design be compatible with the overall design of the center. Blockbuster submitted two sets of plans to the City. Scheme A utilized the standard design package. Scheme B had segmented awnings over front windows. The landlord's architect·notified the City that Scheme A did not comply with its tenant design criteria, but Scheme B was acceptable. Further, Blockbuster's representative informed City staff that while it preferred Scheme A, Scheme B was acceptable. The City approved a final development plan using Scheme B.

Blockbuster chose to construct its building without any awnings and then filed for a revised final development plan utilizing Scheme A, candidly stating it had agreed to Scheme B because it had a corporate goal of opening a certain number of stores per year. Blockbuster had always intended to come back to the City and ask for Scheme A. The City denied the request for a revised final development plan, citing a Shopping Center Design Guideline which required similar architectural styles among buildings.

Blockbuster filed a petition challenging the City's denial of its revised plan, which the trial court denied. This appeal followed.

While Blockbuster raises several legal issues on appeal, we note this case could be resolved on a rationale analogous to the invited error rule. Blockbuster told the City Scheme B was acceptable. Instead of constructing according to Scheme B, it chose to build otherwise and then simply ask for a revised development plan to accommodate its after-the-fact changes. To Blockbuster's credit, it admitted its game plan was driven by the corporate goal of opening a certain number of stores during the year.

In our view, such corporate motivation cannot be rewarded. Blockbuster made its choice in telling the City it could and would live with Scheme B. Blockbuster must live with that choice. The law cannot permit an entity to engage in an intentional plan to circumvent an undesired result. See generally *Cott v. Peppermint Twist Mgt. Co.*, 253 Kan. 452, 459, 856 P.2d 906 (1993); *Miner v. Farm Bur. Mut. Ins. Co., Inc.*, 17 Kan. App. 2d 598, 608, 841 P.2d 1093 (1992), *rev. denied* 252 Kan. 1092 (1993).

With regard to Blockbuster's legal arguments, we note that a resolution is no less legally binding than an ordinance; a resolution is merely a less formal expression of the opinion and wishes of the governing body. See *International Ass'n of Firefighters v. City of Lawrence*, 14 Kan. App. 2d 788, 794, 798 P.2d 960 (1990), *rev. denied* 248 Kan. 996 (1991). Further, inherent in zoning and planning regulations is the concept that a city remain free to act in its perception of the best interests of the community at large. See *Coughlin v. City of Topeka*, 206 Kan. 552, 557, 480 P.2d 91 (1971).

As to Blockbuster's vagueness argument, greater leeway is afforded statutes/ordinances which do not proscribe criminal behavior. See *Hainline v. Bond*, 250 Kan. 217, 226, 824 P.2d 959 (1992). In the present case, the Shopping Center Design Guidelines were not applied in a vague manner; Blockbuster knew from the start that Scheme A was unacceptable. That is precisely why it prepared Scheme B and informed the City that Scheme B was acceptable, only to attempt later to gain approval for Scheme A, known to be unacceptable.

Finally, in response to Blockbuster's argument that the City lacks power to enforce zoning regulations based on aesthetics, we need only turn to a case relied on by Blockbuster. In *Houston v. Board of City Commissioners*, 218 Kan. 323, 329, 543 P.2d 1010 (1975), our Supreme Court observed that since 1923, Kansas has recognized there is an aesthetic and cultural side of municipal development which can be fostered within reasonable limits.

In *Robert L. Rieke Bldg. Co. v. City of Overland Park*, 232 Kan. 634, 642, 657 P.2d 1121 (1983), our Supreme Court recognized a current trend to permit regulation for aesthetic reasons.

We also note K.S.A. 12-755 specifically provides that a city may adopt regulations which "control the aesthetics of redevelopment or new development."

Affirmed.