(131 P.3d 1268)

No. 94,312

R.H. GUMP REVOCABLE TRUST, c/o R.H. GUMP (OWNER), and NORDYKE VENTURES, LLC., c/o MARK NORDYKE, *Appellants*, v. THE CITY OF WICHITA, KANSAS, a Municipal Corporation, *Appellee*.

Opinion filed April 14, 2006.

*Robert W. Kaplan*, of Kaplan, McMillan & Harris, of Wichita, for appellants.

*Joe Allen Lang* and *Jay C. Hinkel*, assistant city attorneys, and *Gary E. Rebenstorf*, city attorney, for appellee.

Before McANANY, P.J., PIERRON and CAPLINGER, JJ.

PIERRON, J.: R.H. Gump Revocable Trust and Nordyke Ventures, L.L.C. (collectively "Gump") appeal the decision of the district court affirming the decision of the City of Wichita (City) to deny a conditional use permit to allow construction of a cellular communications tower. Gump argues City acted unreasonably, City's decision was not supported by substantial evidence under the Telecommunications Act of 1996, and City acted unreasonably by considering the court's remand in executive session. We affirm.

R.H. Gump Revocable Trust, in the care of R.H. Gump, is the owner of real property located 600 feet east of Woodlawn on the south side of Kellogg Avenue in Wichita. Nordyke Ventures, L.L.C., in the care of Mark Nordyke, builds and leases wireless communication facilities.

In July 2000, City and Sedgwick County approved a Wireless Communication Master Plan (master plan) to address the growing needs of the wireless communication industry and incorporated the plan into the Wichita-Sedgwick County Unified Zoning Code (UZC). Communication companies are allowed construction of new disguised ground-mount facility towers up to 85 feet high by administrative permit. There is no prohibition for building new

disguised ground-mount towers in excess of 85 feet, but such towers require a conditional use permit approved by City.

In March 2003, Gump filed a request seeking a conditional use permit to construct a "stealth flagpole" tower for use by Cricket Communications on the real property in question. Gump proposed a wireless communication tower, to house all the antenna equipment, having an initial height of 135 feet, with provisions to extend the height of the tower to 165 feet if necessary to allow other carriers to use the same support structure in the future. A large United States flag would be flown from the flagpole to help disguise its utilitarian purpose.

The Metropolitan Area Planning Department (MAPD) reviewed Gump's application and found the proposed tower conformed to the guidelines of the UZC and master plan and recommended approval of the conditional use subject to certain conditions. The Wichita/Sedgwick County Metropolitan Area Planning Commission (MAPC) granted its approval after a public hearing on April 24, 2003, subject to several maintenance-type conditions and that the flag should be illuminated only at night. The MAPC based its approval on several findings: the mixture of commercial and residential uses along the Kellogg corridor, compatibility, "limited commercial" zoning of the property, visual impact lessened by design, conformance to master plan, and FAA approval.

On May 5, 2003, the District Advisory Board for Council District II (DAB II) also voted to recommend that the application be approved. The only difference between DAB II's recommendation and MAPC's was that DAB II preferred the MAPD's recommendation that the flag be displayed only during daylight hours to avoid the need for nighttime lighting of the flag.

On May 20, 2003, City considered Gump's request for a conditional use permit. Council Member Schlapp moved, and City voted unanimously, to return the application to MAPC, and if necessary the DAB II, for reconsideration of their recommendations. City requested that MAPC address three issues:

"1. Are other structures or buildings that have been suggested by Staff and the public available for location of some or all of the antenna needs of the applicant?

Could multiple shorter towers or flagpoles that do not have the same visual impact on the surrounding neighborhoods meet some of the applicant's needs?
"2. If a facility disguised as a tall flagpole were to be approved, what conditions should be considered for display of any type of flag on such a flagpole?
"3. Is the City adequately protected in the event the applicants (or other users) are financially unable to maintain the facility?"

MAPC considered City's remand request on June 5, 2003. At the MAPC hearing, several citizens spoke against the request and stated numerous concerns and questions. MAPC voted (12 to 1) not to change the previous recommendation of approval subject to the same conditions, including allowing lighting of the flag at night. In its decision, MAPC considered the planning staff's lengthy response to the three questions raised by City.

City reconsidered Gump's request for a conditional use permit at a hearing on June 17, 2003. The acting director of planning reviewed the application for a conditional use permit for the council. After a review of the record, MAPC's reconsideration of the item, along with the original MAPC hearing record, and additional information in the record, Schlapp moved that the application should be denied based on 10 factors: (1) Even with a disguised structure, the proposal is not compatible with the use and character of the neighborhood; (2) extensive beautification efforts in the Kellogg freeway area and negative visual impact from residential and recreation areas; (3) does not conform to the design guidelines of master plan; (4) does not conform to the location guidelines of master plan; (5) does not conform to structural design of master plan; (6) does not conform to co-location guidelines of master plan; (7) overwhelming opposition to proposal; (8) visual impact of tall pole; (9) this is the third attempt to place a wireless facility at this location; and:

"10. Upon review of the total record, . . . the relative gain to the public health, safety and welfare by a denial of this application as compared to the loss in value or the hardship imposed upon the applicant, requires a denial of the application. The applicant has less detrimental alternatives it can pursue to enhance its wireless services in this area."

City denied the conditional use permit to Gump by a vote of 4 to 2.

Gump appealed to the district court claiming the action of City in denying the conditional use permit was without authority and unreasonable. Gump contended the decision was based on improper criteria, contrary to the evidence received in the case, and contrary to the professional recommendations of MAPC and DAB II.

The district court conducted several hearings on the conditional use permit in early 2004. On July 22, 2004, the court issued an order outlining the proceedings up to that date and then remanding to City as follows:

"14. The record discloses citizen opposition based on the aesthetic impact and/ or visual appearance of the tower. The 'findings' of the Council in denying the application appear to be based entirely on the aesthetic impact or visual impact of the tower. However, in Finding #10, the Council concluded that 'the relative gain to the public health, safety, and welfare by denial of the application as compared to the loss in value or the hardship imposed upon the applicant, requires a denial of the application.' This finding is conclusory, vague, and appears to lack factual support. Because this 'finding' may have a material impact on the Court's ultimate decision in this matter, the Court directs the Council to clarify the factual underpinnings of their finding."

City considered the district court's remand order at the September 14, 2004, council meeting while in executive session. City unanimously adopted additional findings of fact as presented by its law department. Concerning the gain to public health, safety, and welfare of the community, City addressed: (1) the impact of lighting the flag and that the visual impact of the proposed tower exists whether or not the flag is lighted; (2) treatment of the flag and fear Gump will not fulfill its requirement to properly care for the size of flag necessary for the flagpole; (3) previous findings on the impingement of the aesthetics and visual impact of the flagpole; and (4) previous outlined failures of the application to conform to the master plan.

Concerning the loss in value or the hardship imposed upon the applicant, City stated: (1) property owner will not be denied all value because other commercial uses are possible on the property; (2) location is not essential to the ability of the wireless industry to

provide complete coverage and availability of alternative sites; and (3) multiple shorter towers could meet Gump's needs.

Concerning the balance of the public interest to Gump's hardship, City addressed: (1) conflicting facts and strong opinions in the case; (2) alternative sites; and (3) the strong weight of the facts showing a detrimental impact on the general health, safety, and welfare of the community and how this *Golden* factor weighs for the denial of the application. See *Golden v. City of Overland Park*, 224 Kan. 591, 584 P.2d 130 (1978), City unanimously adopted the additional findings.

After City adopted the additional findings on remand, the district court took up the ultimate issues in this case at a hearing on Gump's motion to permit discovery. The district court denied the motion to permit discovery and announced, *sua sponte*, that it was prepared to rule on the merits of the case. After consideration of the original findings, arguments of counsel, and amended City findings, the court concluded: (1) City's determination was based solely upon the visual impact and aesthetics of the proposed tower; (2) City was entitled under the law to make its determination on that basis; (3) Gump had not proven the unreasonableness of the denial of the conditional use permit; and (4) City had taken into account the benefit or harm involved to the community at large and had exercised its discretion to make a decision on that basis that was not so wide of the mark that it was outside the realm of fair debate.

The district court denied Gump's motion for reconsideration and found that City's action in denying the conditional use permit was based on "substantial evidence" as that term is defined in *U.S. Cell. Tele. v. Great. Tulsa Broken Arrow, OK*, 340 F.3d 1122 (10th Cir. 2003). Gump appeals.

Gump argues City's denial of the conditional use permit was unreasonable. Gump argues that its application for a conditional use permit complied with, in every objective way possible, all the requirements of the master plan and that even City's professional planning staff recommended approval of the permit with various conditions.

The tenets of our standard of review are well established in cases of zoning matters.

"In zoning appeals, the standard of review for district courts as well as for this court is set forth in *Combined Investment Co. v. Board of Butler County Comm'rs*, 227 Kan. 17, 28, 605 P.2d 533 (1980):

'(1) The local zoning authority, and not the court, has the right to prescribe, change or refuse to change, zoning.

'(2) The district court's power is limited to determining
    (a) the lawfulness of the action taken, and
    (b) the reasonableness of such action.

'(3) There is a presumption that the zoning authority acted reasonably.

'(4) The landowner has the burden of proving unreasonableness by a preponderance of the evidence.

'(5) A court may not substitute its judgment for that of the administrative body, and should not declare the action unreasonable unless clearly compelled to do so by the evidence.

'(6) Action is unreasonable when it is so arbitrary that it can be said it was taken without regard to the benefit or harm involved to the community at large, including all interested parties, and was so wide of the mark that its unreasonableness lies outside the realm of fair debate.

'(7) Whether action is reasonable or not is a question of law, to be determined upon the basis of the facts which were presented to the zoning authority.

'(8) An appellate court must make the same review of the zoning authority's action as did the district court.' " *McPherson Landfill, Inc. v. Board of Shawnee County Comm'rs*, 274 Kan. 303, 306, 49 P.3d 522 (2002).

Examining the reasonableness of the planning authority's decision is also well established in Kansas law, also known as the *Golden* factors. In *Golden*, 224 Kan. at 597, the Kansas Supreme Court observed:

"A mere yes or no vote upon a motion to grant or deny [a request for zoning change] leaves a reviewing court, be it trial or appellate, in a quandary as to why or on what basis the board took its action. A board, council or commission, in denying or granting a specific zoning change, should enter a written order, summarizing the evidence before it and stating the factors which it considered in arriving at its determination."

The following *Golden* zoning factors are suggestions and other factors may be equally or more important factors depending of the circumstances of the particular case: (1) the character of the neighborhood; (2) the zoning and uses of properties nearby; (3) the suitability of the subject property for the uses to which it has been restricted; (4) the extent to which removal of the restrictions will detrimentally affect nearby property; (5) the length of time the

subject property has remained vacant as zoned; (6) the gain to the public health, safety, and welfare by the possible diminution in value of the developer's property as compared to the hardship imposed on the individual landowners; (7) the recommendations of a permanent or professional planning staff; and (8) the conformance of the requested change to the city's master or comprehensive plan. See *Golden,* 224 Kan. at 598.

"The local zoning authority, and not the court, has the right to prescribe, change, or refuse to change zoning. The district court's power is limited to determining the lawfulness of the action taken and the reasonableness of such action." *Board of Johnson County Comm'rs v. City of Olathe,* 263 Kan. 667, Syl. ¶ 1, 952 P.2d 1302 (1998). "Reasonableness is a question of law to be determined on the facts. On appeal, we apply the same standard as the trial court. [Citation omitted.]" *Rodrock Enterprises, L.P. v. City of Olathe,* 28 Kan. App. 2d 860, 863, 21 P.3d 598, *rev. denied* 271 Kan. 1037 (2001).

Initially, we recognize that City is not following the recommendation of the MAPC. However, this is not per se arbitrary. The court in *Houston v. Board of City Commissioners,* 218 Kan. 323, 330, 543 P.2d 1010 (1975), addressed this very argument:

"Their second argument on arbitrariness is that the city commission was per se arbitrary in rejecting the recommendation of the planning commission. The argument misconceives the respective roles of the two bodies.
' . . . [T]he function of the planning commission is advisory only, its authority being limited to a study of the facts and submission of its recommendations to the governing body wherein authority to take final action lies.' (*Burke & McCaffrey, Inc. v. City of Merriam,* 198 Kan. 325, 327, 424 P.2d 483.)"

Gump contends the findings adopted by City are without support in the record which exposes its findings regarding the "aesthetics" or "visual impact" to a high degree of suspicion as to the existence of an adequate basis for such a finding. Gump argues City established rules for cellular towers in its master plan. Gump complied with all of the rules, the MAPC approved the application with conditions, and City denied the application because of neighborhood opposition to the tower appearance. Gump contends City cannot deny an application on aesthetics alone.

The district court has cut to the essence of this case—City's determination was based solely upon the visual impact and aesthetics of the proposed stealth tower. The court found City was entitled under the law to make this determination and Gump had not proven the unreasonableness of the denial of the conditional use permit. The court also found City had taken into account the benefit or harm involved to the community at large and had exercised its discretion to make a decision on that basis that was not so wide of the mark that it was outside the realm of fair debate. We agree.

City had to balance the benefits and the harms to all parties involved and come to a resolution of the case. The master plan contemplates this type of harm/benefit analysis by requiring approval by conditional use permit of telecommunication towers that extend over 85 feet in height.

While no case is directly on point, several cases addressed by the parties provide valuable assistance on the aesthetics factor in zoning appeals. In *Houston,* 218 Kan. 323, the court considered a zoning change from light commercial to multiple family. In opposition to the change, the plaintiffs argued that preserving the character of the neighborhood was not a legitimate purpose of a zoning ordinance because the result was aesthetic and not related to the public welfare. In ultimately holding that preserving the residential character of the neighborhood was a legitimate purpose of the zoning ordinance, the *Houston* court stated:

"It does plaintiffs no good to characterize the purpose here as 'aesthetic.' As long ago as 1923 we recognized in a zoning case that '[t]here is an aesthetic and cultural side of municipal development which may be fostered within reasonable limitations. [Citations omitted.] Such legislation is merely a liberalized application of the general welfare purposes of state and federal constitutions.' (*Ware v. City of Wichita,* 113 Kan. 153, 157, 214 Pac. 99.) Along the same lines, in upholding an urban renewal project the United States Supreme Court commented on the 'public welfare' aspect of the police power:

'. . . The concept of the public welfare is broad and inclusive. See *Day-Brite Lighting, Inc. v. Missouri,* 342 U.S. 421, 424, 96 L. Ed. 469, 72 S. Ct. 405. The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as

carefully patrolled.' (*Berman v. Parker*, 348 U.S. 26, 33, 99 L. Ed. 27, 75 S. Ct. 98.

And see *Village of Belle Terre v. Boraas*, 416 U.S. 1, 39 L. Ed. 2d 797, 94 S. Ct. 1536, where the Court upheld an ordinance zoning an entire village for single family dwellings. In so doing the Court observed: ' . . . The police power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.' (Id. p. 9.)

"The zoning here, of course, is not 'aesthetic' in the sense that it purports to control the appearance of plaintiffs' property. The objective sought is the exclusion of commercial uses from a residential area. Any 'aesthetic' effect is purely incidental and entirely permissible. See Anno., *Zoning-Aesthetic Considerations*, 21 A.L.R.3d 1222." 218 Kan. at 329.

In *Robert L. Reike Bldg. Co. v. City of Overland Park*, 232 Kan. 634, 657 P.2d 1121 (1983), the court upheld an ordinance regulating attention attracting devices, such as searchlights, on property located within the city. In concluding that the zoning regulations were valid and constitutional and fell within the police power of the city, the court stated:

"The evidence in this case includes the testimony of several expert witnesses to the effect that the maintenance and operation of searchlights on a regular basis would have measurable adverse impact on the valuation and marketability of *nearby* residential properties. Although the courts have not been in complete accord in the past, the current trend of the decisions is to permit regulation for aesthetic reasons. See *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 101 S. Ct. 2882, 69 L.Ed.2d 800." 232 Kan. at 642-43.

In *Blockbuster Video, Inc. v. City of Overland Park*, 24 Kan. App. 2d 358, 948 P.2d 179 (1997), the court relied on both *Houston* and *Rieke* in holding that the city had the power to enforce zoning regulations concerning types of awnings based on aesthetics. The *Blockbuster* court stated: "There is an aesthetic and cultural side of municipal development which can be fostered within reasonable limits; regulation of redevelopment or new development is permitted for aesthetic reasons. K.S.A. 12-755." 24 Kan. App. 2d 358, Syl. ¶ 2.

Gump argues City's decision in this case was pure subjectivity. Gump maintains pure subjectivity is what distinguishes the case at bar from *Houston, Rieke,* and *Blockbuster* where there were objective reasons as well. Gump submits that because of the inher-

ently subjective nature of a decision based solely upon appearance, the court must impose some type of objective standard by which the court can determine the reasonableness of the decision or have sufficient other objective reasons to support the action of the governing body.

City argues that even if the application meets all the technical requirements in the master plan concerning a telecommunications structure, it is still a quasi-judicial decision of MAPC and City concerning the impact of the structure on the neighborhood and community. City argues that we are not to reweigh the evidence pursuant to the *Golden* factors, but review whether its findings were reasonable. City contends that while a party may dispute its judgment on the *Golden* factors, it is clear that City considered the evidence presented and made its decision. City states that it does not have to make the best decision, only a reasonable one.

This case does not present the garden variety of zoning appeals where the granting or denial of a zoning request has a public health, safety, and welfare facet to it. As indicated by the district court, the aesthetics or the visual appearance of this tower is at the heart of whether to allow construction of a stealth flagpole to house the telecommunication equipment. This aesthetical consideration permeates nearly all of City's reasons for denying the conditional use application.

We also find there is public opposition to this conditional use permit. Neighborhood objections are not legally sufficient to deny use, or even conditional uses, of land. However, it remains a consideration in the ultimate decision. "Zoning is not to be based upon a plebiscite of the neighbors, and although their wishes are to be considered, the final ruling is to be governed by consideration of the benefit or harm involved to the community at large." *Waterstradt v. Board of Commissioners*, 203 Kan. 317, Syl. ¶ 3, 454 P.2d 445 (1969).

City decided that the proposed stealth flagpole was incompatible and inconsistent with the area. There were no other flagpoles of that size, and extensive beautification efforts had been made in the area. We agree with the district court that City had taken into account the benefit or harm involved to the community at large

and had exercised it discretion to make a decision on that basis that was not so wide of the mark that it was outside the realm of fair debate. While we may or may not fully agree with City, it is the body in charge of the aesthetical considerations of the community and the character of its neighborhoods. We do not find City has breached the *Blockbuster* standard of "an aesthetic and cultural side of municipal development which can be fostered within reasonable limits." 24 Kan. App. 2d 358, Syl. ¶ 2.

While aesthetic considerations may not be as precise as more technical measures and must be carefully reviewed to assure that they are not just a vague justification for arbitrary and capricious decisions, they may be considered as a basis for zoning rulings.

Gump next makes a rather brief argument that the district court erred in holding that substantial evidence existed under the Telecommunications Act of 1996 (Act) to support the denial of the conditional used application.

The Act gives ultimate authority to local governing bodies. See 47 U.S.C. § 332(c)(7)(B) (2000); *Cellular Telephone v. Zoning Bd. of Adjustment,* 197 F.3d 64, 68 (3d Cir. 1999) (The Act expressly preserves local zoning authority over the placement, construction, and modification of personal wireless service facilities.). The Act also provides that denials of a request to place, construct, or modify personal wireless service facilities must be "supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

Gump simply cites the Act and various case law for the argument that even in the federal regulations for the telecommunication industry, decisions of the governing body must be supported by substantial evidence. Gump argues the only evidence in the record to support City's decision was the fact that a number of area residents had stated that the stealth tower would not look good in the neighborhood. Gump surmises that if all it takes in a zoning case is for neighbors to state that they object to the appearance of the proposed structure, then no applicant can ever be successful in challenging a zoning decision.

City argues the district court applied the correct review of City's denial of the conditional use permit. The court determined: "The

City has taken into account the benefit or harm involved to the community at large, and has exercised a decision on that basis that is not so wide of the mark that its unreasonableness is outside the realm of fair debate." City states the court's standard is not too far afoot from the substantial evidence standard applied in *Broken Arrow*, 340 F.3d at 1133:

" 'Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker]. Substantial evidence requires more than a scintilla but less than a preponderance.' *Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992) (internal quotation marks omitted). 'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.' *Curtis, Inc. v. I.C.C.*, 662 F.2d 680, 685 (10th Cir. 1981)."

City argues there has been no allegation that the denial of the application will prevent Gump or Cricket from serving the community. City argues there is sufficient evidence as previously explained to affirm both the decision of City and the court under the *Golden* factors and under the Act.

As stated in our previous analysis, we find there is substantial evidence to support City's denial of Gump's conditional use application, although reasonable persons might have found otherwise.

Last, Gump argues City denied it an open hearing when it considered the district court's remand order in executive session. Gump states that it is highly unlikely that notice and an opportunity to be heard would have swayed the City to reach different findings, but nevertheless it is insufficient to allow the council to proceed in executive session without notice under the guise that the matter involves litigation.

Gump cites *Tri-County Concerned Citizens, Inc. v. Board of Harper County Comm'rs*, 32 Kan. App. 2d 1168, 95 P.3d 1012 (2004), not for its similar fact pattern, but for a general statement that due process must be provided in quasi-judicial functions of zoning decisions. In a quasi-judicial proceeding, it is incumbent upon the authority to comply with the requirements of due process in its proceedings. Thus, the proceedings must be fair, open, and impartial. A denial of due process renders the resulting decision

void. See *Suburban Medical Center v. Olathe Community Hosp.*, 226 Kan. 320, 330-32, 597 P.2d 654 (1979).

In *Houston*, 218 Kan. at 330-31, the court addressed due process concerns in a situation where both a planning commission and a governing body are involved.

"Complaint is also made of the city's procedure in adopting zoning ordinances. The city commission's policy is that public hearings on zoning matters are to be conducted by the planning commission as provided by statute. An additional public hearing before the city commission is not conducted unless a party alleges either that the planning commission hearing was unfair or that there are new facts or new evidence.

"In this case plaintiffs *were* afforded a hearing before the city commission, at which counsel, Mrs. Fiedler, Mr. Houston and Mr. Luinstra were all heard. The record shows, in fact, that both counsel and Mr. Houston were allowed additional time to present their arguments to the city commission. Under these circumstances their complaint really is that they were heard as a matter of grace and not of right. Such a complaint is purely academic, since they were in no way prejudiced by the city's procedure.

"But even if the city commission had not heard them they would have no valid grounds for complaint. There is no allegation that the city did not strictly comply with the procedure set forth in K.S.A. 1974 Supp. 12-708. The required notice was given, and two full and complete hearings were held by the planning commission, at which plaintiffs appeared in person or by counsel. The substance of the arguments pro and con was recorded, and a complete record of the proceedings was certified to the governing body on each occasion. There is nothing in the statute requiring the city commission to rehear the matters which were presented to the planning commission, nor are we cited any authority which would impose such a requirement as a matter of constitutional law.

"A contention similar to plaintiffs' was made in *Tulsa Rock Co. v. Board of Cty. Com'rs of Rogers Cty.*, Okl. App., 531 P.2d 351 (1974). There a full hearing was held by the planning commission but the city commissioners' meeting at which the zoning ordinance was adopted was held without notice and no hearing was held by that body. As here, the city commission reversed the recommendation of the planning commission. The court gave short shrift to the landowner's procedural complaint, observing, 'The law does not require that the Board (of city commissioners) duplicate the Planning Commission hearing; it provides for a hearing by the Planning Commission, and such a hearing was in fact held and resulted in recommendations which were sent to the defendant Board and considered by it.' (P. 357.)

"So in this case, under its policy the city commission stands ready to hear anything new, but declines to rehear evidence or arguments which have already

been presented. We find nothing objectionable in such a procedure." 218 Kan. at 331.

Gump raises no argument that it was denied due process, including all the proceedings before MAPC, except for the fact that City held an executive session to discuss the district court's remand order. City directs the court to its policy that it does not hold public hearings concerning any zoning or other planning items on which MAPC has already held an official public hearing.

It is not settled law what process was due Gump on the remand. In *Board of Lincoln County Comm'rs v. Berner*, 5 Kan. App. 2d 104, 613 P.2d 676 (1980), the court stated: "In view of the holding in *Houston*, we conclude that notice and hearing are not required by due process for the meeting in which the plan is adopted by the planning board, provided there was notice and a public hearing prior to the said meeting of adoption."

In the instant case, the district court did not order City to hold additional hearings or take additional evidence. The court's direction was clear: "Because this 'finding' [No. 10] may have a material impact on the Court's ultimate decision in this matter, the Court directs the [City] to clarify the factual underpinnings of their finding."

Gump does not dispute that it was able to present City additional evidence, in the form of the district court transcript, for City's deliberations in executive session. There is no evidence City would not have examined any additional evidence Gump would have submitted as well. After deliberations in executive sessions, City took up the remand order on its agenda on September 14, 2004, and made additional findings as directed by the court. We find no violation of due process concerning City's actions on the court's remand order.

We find support for our overall decision in *Omnipoint Communications v. White Plains*, 430 F.3d 259 (2d Cir. 2005), which has similar facts. We do not find the cited case of *Sprint PCS Assets, L.L.C. v. City of La Canada*, 435 F.3d 993 (9th Cir. 2006), to be of assistance as the applicable state laws placed extreme lim-

itations on the use of aesthetic consideration in cases involving the approval of telecommunications antennas.

Affirmed.